IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRET ALLEN PATTERSON )
)
v. )     NO. 3:07-0029
)
WAYNE BRANDON, WARDEN )

TO:    Honorable Robert L. Echols, District Judge

# R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered May 18, 2007 (Docket Entry No. 17), the Court referred the instant Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2254 to the Magistrate Judge for further proceedings under Rule 8(b) of the Rules Governing Section 2254 Cases, 28 U.S.C. § 636(b)(1)(B), and Rule 7 of the Local Rules for Magistrate Judge Proceedings.

Respondent has filed an answer (Docket Entry No. 33) to petition, to which Petitioner has filed a response (Docket Entry No. 35). For the reasons set out below, the Court recommends that the petition be denied and this action be dismissed.

## I. BACKGROUND

Petitioner is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the West Tennessee State Prison ("WTSP"). In February 1988, he was convicted by a jury in Montgomery County, Tennessee, of two counts of first degree murder, one count of first degree burglary, and one count of aggravated rape. At sentencing, Petitioner received two consecutive life sentences for the murder convictions, a consecutive sentence of 40 years for the rape conviction, and a ten year concurrent sentence for the burglary conviction.

Petitioner's convictions were based on facts showing that he and a co-defendant, Ronnie Cauthern ("Cauthern"), broke into the Clarksville, Tennessee, home of Patrick and Rosemary Smith on the night of Thursday, January 8, 1987, and killed both Mr. and Mrs. Smith by strangling them to death. Several items of the victims were stolen and Mrs. Smith was also sexually assaulted. The crimes were discovered the next day when police from the Clarksville Police Department went to their home after the victims had not reported for their work at the Blanchfield Army Hospital in Fort Campbell, Kentucky, where they both served as captains in the U.S. Army Nurse Corps.

On January 12, 1987, James Andrew, an acquaintance of Cauthern, provided the police with information and evidence implicating Petitioner and Cauthern in the crimes. That same day, Cauthern's girlfriend also gave to police a lady's ringset and wristwatch that Cauthern had recently given her and which was later identified at trial as belonging to Rosemary Smith. Based upon this information, on the afternoon of January 12, 1987, several law enforcement officers went to a duplex located on Faith Drive where Petitioner resided and found Petitioner, Cauthern, and Eric Barbee, the man who resided in the adjoining duplex, outside the duplex around a parked car that had both its hood and trunk lid open. Officers secured the area and seized credit cards, bank checks, and other identification cards belonging to the victims from the open trunk of the automobile that was parked at the residence and to which Cauthern gave written consent to search and from a jacket belonging to Cauthern. Petitioner and Cauthern were arrested and taken to the Clarksville Police Department where they were separately interviewed.[1] Both men gave inculpatory confessions. Several hours after the police initially arrived at the duplex, a search warrant was issued for a search of Petitioner's residence which led to the discovery of substantial amounts of incriminating evidence. Petitioner and Cauthern were tried jointly on February 18-23, 1988. Neither man testified at trial.

Petitioner's direct appeal was denied and his conviction and sentences were affirmed by the Tennessee Court of Criminal Appeals on December 8, 1989, in State v. Patterson, 1989 WL 147404

---

[1] It appears that Barbee was also arrested and taken to the police department for questioning. Although the disposition of any charges brought against him is unknown, that information is not relevant to this proceeding.

Case 3:07-cv-00029   Document 41   Filed 03/01/10   Page 2 of 34 PageID #: 546

(Tenn. Crim. App. Dec. 8, 1989). <u>See</u> Docket Entry No. 14-1, at 2-10. The Tennessee Supreme Court denied his request for permission to appeal on March 5, 1990. <u>See</u> Docket Entry No. 14-1, at 12.

On October 29, 1992, Petitioner filed a petition in the state court for post-conviction relief. He subsequently amended the petition three times. The petition was denied after a hearing, and on September 10, 1999, the Tennessee Court of Criminal Appeals affirmed the judgment of the post-conviction court in <u>Patterson v. State</u>, 1999 WL 701455 (Tenn. Crim. App. Sept. 10, 1999). <u>See</u> Docket Entry No. 14-1, at 14-26. Petitioner's application for permission to appeal was denied by the Tennessee Court of Criminal Appeals on April 24, 2000. <u>See</u> Docket Entry No. 14-1, at 28.

On March 27, 2001, Petitioner filed a motion to reopen his prior post-conviction relief petition. He subsequently moved the state court to accept an amended post-conviction petition instead of his motion to reopen and later filed an "amended motion for DNA testing of evidence and petition for post-conviction relief." <u>See</u> Docket Entry No. 14, Exhibit E, at 2. On May 3, 2004, the state court addressed the claims raised by Petitioner in this second post-conviction relief proceeding and denied the petition. On October 26, 2006, the Tennessee Court of Criminal Appeals affirmed the dismissal of the petition in <u>Patterson v. State</u>, 2006 WL 3093216 (Tenn. Crim. App. Oct. 26, 2006). <u>See</u> Docket Entry No. 14-1, at 30-36. Petitioner did not seek permission to appeal to the Tennessee Supreme Court from this decision.

## II. PETITION AND PROCEDURAL BACKGROUND

On January 8, 2007, Petitioner filed the instant petition (Docket Entry No. 1) for habeas corpus relief under 28 U.S.C. § 2254 seeking an order reversing his convictions with prejudice and releasing him from incarceration.[2] In his petition and 190 page supporting brief, he raises nineteen separate grounds for relief:

_____

[2] On October 10, 1996, Petitioner filed a prior federal petition for relief under 28 U.S.C. § 2254. <u>Patterson v. Holland</u>, No. 3:96-0934. By Order entered April 8, 1999, that petition was dismissed without prejudice to refiling after Petitioner had exhausted his state court remedies.

3

1.     he is entitled to have physical evidence in the possession of the state subjected to DNA analysis in accordance with T.C.A. §§ 40-30-301, 304, and 305;

2.     he has suffered a total denial of due process of law because the proceedings against him have been in direct violation of his federal and state constitutional rights;

3.     the prior findings of fact of the state courts are clearly erroneous on their face;

4.     the investigatory raid conducted on January 12, 1987, was illegal;

5.     the investigatory search of his person on January 12, 1987, was illegal;

6.     the subsequent searches of his residence, vehicle, and immediate surrounding areas were illegal;

7.     his interrogation and resulting statement were coerced and illegal;

8.     the search warrant later issued was illegal because it was based upon an affidavit that contained deliberately false, reckless, and misleading statements;

9.     the trial court erred by allowing redacted statements of the Petitioner and his co-defendant to be entered into evidence;

10.     the admission of redacted statements of Petitioner's co-defendant violated Petitioner's right to confrontation;

11.     the trial court erred by allowing admission of the redacted statements prior to reviewing them;

12.     the trial court erred because the admission of the Petitioner's redacted statement altered the material factual circumstances of his admissions exposing him to a greater likelihood of conviction and a greater penalty;

13.     the testimony of James Andrew was prejudicial hearsay, the admission of which violated Petitioner's right to a fair trial, to confront the witness and was in violation of the Fifth, Sixth, and Fourteenth Amendments;

14.     the testimony of the state's witnesses, specifically, Bobby Gray, Michael Breedlove, Earl Crockarell, James Andrew, and Joseph Denning, was perjured and illegal;

15.     the prosecuting attorney, C. Wade Bobo, committed prosecutorial misconduct by knowingly lying to Petitioner's counsel, the Court, and the jury;

16.     the state withheld exculpatory evidence from Petitioner's defense consisting of statements of Joseph Denning and Eric Barbee and a police report filed by James Andrew;

17.     Petitioner's appointed counsel were constitutionally ineffective for failing to make a reasonable effort to investigate his case;

4

18.     Petitioner's counsel at trial, on direct appeal, and on post-conviction and collateral appeal, were constitutionally ineffective because they failed to make any effort to actually investigate the case, to defend him, and to subject the state's case to an adversarial hearing; and

19.     Petitioner was denied a right to a fair trial through prejudicial misconduct, perjury, fraud, and improper intervention of the state and the state's witnesses in interfering with defense counsel's representation and decision-making in the case.

See Petitioner's Brief in Support (Docket Entry No. 3), at 16-18.

Respondent initially filed a motion to dismiss the petition in lieu of an answer arguing that the petition was untimely since it was not filed within the one-year statute of limitations set out in 28 U.S.C. § 2244(d)(1). By Order entered March 24, 2008 (Docket Entry No. 24), the Court found that the petition was not untimely, denied Respondent's motion to dismiss, and ordered Respondent to answer the petition.

## III. ANSWER AND RESPONSE

Initially, Respondent contends that the petition and supporting brief violate Rule 2(c) of the Rules Governing Section 2254 Cases because neither filing was signed by Petitioner under penalty of perjury and because many of the grounds for relief set forth by Petitioner do not include a statement of supporting facts. See Answer (Docket Entry No. 33), at 17 and 21, n.1. Respondent also reasserts the argument that the petition is untimely under the applicable statute of limitations. Respondent then argues that Petitioner's first ground for relief fails to present a cognizable habeas corpus claim but that the next eighteen (18) grounds for relief cannot be reviewed on their merits in this Court because they have been procedurally defaulted.

## IV. STANDARDS GOVERNING REVIEW

Petitions for federal habeas corpus relief filed after April 24, 1996, are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). See Martin v. Mitchell, 280 F.3d 594, 602 (6th Cir. 2002). In accordance with the AEDPA, the Court may grant the writ of habeas corpus on a claim that was adjudicated on the

5

merits in state court only if that adjudication: (1) resulted in a decision that was contrary to, or involved in an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Nevers v. Killinger, 169 F.3d 352, 357 (6th Cir. 1999).

In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, Petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. Williams, supra. In short, a state court judgment must be upheld unless, after an examination of the judgment, the Court is firmly convinced that a federal constitutional right has been violated. Id.

When state courts have made factual determinations regarding issues presented for federal habeas corpus review, such determinations are presumed to be correct, and Petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See Miller-el v. Cockrell, 537 U.S. 322, 324, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Under the AEDPA, the purpose of federal habeas corpus review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. Bell v. Cone, 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

Upon consideration of the petition and Respondent's answer, it appears that an evidentiary hearing is not required in this matter. See Sawyer v. Hofbauer, 299 F.3d 605, 610 (6th Cir. 2002). Therefore, the Court shall dispose of the petition as the law and justice require. See Rule 8, Rules Governing Section 2254 Cases.

## V. RULE 2(c)

Rule 2(c) of the Rules Governing Section 2254 Cases requires that the petition state the facts supporting each ground for relief and also requires that the petition be signed under penalty of perjury by the petitioner.  See subsections 2(c)(2) and (5).  Respondent's assertion that the instant petition does not comply with these requirements is unfounded.

Petitioner supported his petition with a 190 page brief (Docket Entry Nos. 3, 3-1, 3-2, 3-3, and 3-4) and a 130 page appendix (Docket Entry Nos. 2, 2-1, and 2-2).  These filings certainly satisfy the technical requirement of Rule 2(c)(2).  Indeed, the instant petition may be the most comprehensive habeas corpus petition submitted by a pro se petitioner that the Magistrate Judge has ever reviewed.

Petitioner clearly signed his petition under penalty of perjury.  See Docket Entry No. 1.  To the extent that Respondent argues that the Petitioner's supporting brief must also be signed under penalty of perjury, there is no such requirement in Rule 2(c).

Respondent's argument on the signature issue is likely due to the fact that the scanned copy of the original petition available on ECF does not include pages 13, 23-24, 35, 37-38, and 40-41 of the original petition.  See Docket Entry No. 1.  Nonetheless, the Petitioner clearly included on each page of his petition a header at the right hand side of the top of each page which states that the petition has 41 pages.  It is clear from a reading of the petition that there are missing pages.  For instance, page 13 (labeled page 14 by Petitioner) begins with section (3), whereas the preceding page on the docket does not include sections (1) and (2).  Even more striking, page 22 (labeled page 25 by Petitioner), begins with "ground eleven," although the preceding page addresses "ground nine" and does not address "ground ten."  Under these circumstances it is astonishing that counsel for Respondent could have read the petition available on ECF and not noticed that several pages of the petition, including the signature page, were clearly not electronically scanned.  These facts should have prompted Respondent to contact the Clerk to obtain a complete copy of the original petition.

7

## VI. TIMELINESS OF THE PETITION

The statute of limitations argument raised by Respondent in the answer has already been addressed and denied by the Court. <u>See</u> Order entered March 24, 2008 (Docket Entry No. 24).

## VII. PROCEDURAL DEFAULT

A claim for federal habeas corpus relief will be deemed to have been procedurally defaulted when the claim cannot be heard on the merits because of an irregularity with the claim in the prior state court proceedings. The procedural default analysis, although a distinct concept, flows naturally from the requirement of exhaustion.

28 U.S.C. § 2254(b)(1) provides that an application for a writ of habeas corpus shall not be granted unless it appears that the applicant has exhausted the remedies available to him in the state courts. Exhaustion is required in order to give the State the first opportunity to pass upon and correct alleged violations of its own prisoners' federal rights. <u>Baldwin v. Reese</u>, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); <u>Wilwording v. Swenson</u>, 404 U.S. 249, 250, S.Ct., L.Ed.2d (1971). Accordingly, a petitioner must have exhausted his state court remedies with respect to his claims before he can pursue the claims in a federal habeas corpus petition brought under Section 2254. <u>Rose v. Lundy</u>, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); <u>Wilson v. Mitchell</u>, 498 F.3d 491, 498 (6th Cir. 2007); <u>Cohen v. Tate</u>, 779 F.2d 1181, 1184 (6th Cir. 1985).

The petitioner has the burden of showing exhaustion. <u>Rust v. Zent</u>, 17 F.3d 155, 160 (6th Cir. 1994). However, merely bringing a claim before the state courts does not satisfy the exhaustion requirement. To be exhausted, the claim must have been fairly presented to the state court giving the state court a full and fair opportunity to rule on the claim. <u>Justices of Boston Mun. Court v. Lydon</u>, 466 U.S. 294, 302-303, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); <u>Deitz v. Money</u>, 391 F.3d 804, 808 (6th Cir. 2004); <u>Manning v. Alexander</u>, 912 F.2d 878, 881 (6th Cir. 1990). <u>See also</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). A claim must have also been presented to the state court in a procedurally correct form. <u>Coleman v. Thompson</u>, 501 U.S.

8

722, 729-32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1992); <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 763 (6th Cir. 2006).

Thus, when a habeas corpus petitioner has not raised his claims before the state courts and no longer has an avenue to raise them,[3] has not fairly presented his claims to the state courts, or has had the claims dismissed by the state courts because state procedural rules were not followed, the state courts have been prevented from passing on the merits of the claims due to the conduct of the petitioner. Such claims are deemed to have been procedurally defaulted and are generally foreclosed from review through a federal habeas corpus petition. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 80, 84-87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); <u>Smith v. State of Ohio Dept. of Rehab.</u>, 463 F.3d 426, 430-31 (6th Cir. 2006); <u>Lundgren</u>, <u>supra</u>.

In the instant action, it is undisputed that Petitioner raised each of his nineteen habeas grounds for relief in either his direct appeal, his first post-conviction relief proceeding, or his second post-conviction relief proceeding. <u>See</u> Petition and Answer. Respondent contends that, aside from Petitioner's first ground for relief, his other eighteen grounds for relief have been procedurally defaulted because the state court hearing Petitioner's second post-conviction relief petition found that the grounds had either already been raised in Petitioner's direct appeal or his first post-conviction proceeding or were waived because they had not previously been raised. <u>See</u> Answer (Docket Entry No. 33), at 22-25.

There is no basis for Respondent's argument that the grounds for relief which were raised in Petitioner's direct appeal or in his first petition for post-conviction relief, Grounds Nos. 4-12 and 17-18, are procedurally defaulted. Respondent appears to argue that a procedural default of these claims arises because the state court hearing Petitioner's second post-conviction relief petition declined to address the merits of these claims *because the claims had already been raised and*

---

[3] If state court remedies remain available to a petitioner at the time of the filing of his habeas corpus petition, a lack of exhaustion, not a procedural default, would bar review of any claims not previously presented to the state courts. <u>See</u> <u>Williams v. Anderson</u>, 460 F.3d 789, 806 (6th Cir. 2006).

9

*addressed in Petitioner's direct appeal and first post-conviction relief proceeding.* (Italics added for emphasis). This curious and circular argument suggests a fundamental misunderstanding of the procedural default doctrine.

The exhaustion requirement is satisfied once a ground for relief has been fairly presented to the state courts, both procedurally and substantively, as a federal constitutional claim and has been pursued through one entire avenue of relief. See Lott v. Coyle, 261 F.3d 594, 608 (6th Cir. 2001). The fact that a state prisoner raises an already exhausted claim a second time in a subsequent state proceeding does not nullify his prior exhaustion of the claim. Nor does a state court's refusal to revisit the claim on its merits a second time render the claim procedurally defaulted. In Petitioner's case, the state court's declaration that Grounds Nos. 4-12 and 17-18 would not be revisited because they had already been heard and addressed by prior state courts was not an application of a state procedural rule but merely a recognition that the claims did not need to be reviewed again. There are no facts showing that Petitioner took any action which prevented these eleven grounds for relief from being heard by the state courts such that a finding of procedural default would be warranted.

With respect to Grounds Nos. 2, 3, 13-16, and 19, however, Respondent's assertion of procedural default, although extremely cursory and of no help from an analysis standpoint,[4] is on point. The state court, after finding that these claims had not been previously raised in Petitioner's direct appeal or first post-conviction relief proceeding, noted the applicable state law of waiver as follows:

> in a post-conviction proceeding, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented unless" the claim is based upon a newly-recognized constitutional right with retroactive application or the ground was not presented as the result of State action in violation of the federal or state constitution. Tenn. Code. Ann. § 40-30-206(g);[5] see State v. Benson, 973 S.W.2d 202, 208 (Tenn. Crim. App. 1998).

---

[4] The entire breadth of Respondent's procedural default analysis consists primarily of the statement that a particular claim "is procedurally defaulted here." See Docket Entry No. 33, at 22-25.

[5] The waiver provision is currently set forth in Tenn. Code. Ann. § 40-30-106(g).

See Docket Entry No. 14-1, at 32. After determining that neither exception applied to excuse Petitioner's failure to previously raise the grounds for relief, the state court found that the grounds for relief were waived under state law.

When the last state court hearing a claim relies on a state procedural rule to bar review of the merits of the claim, the state court's decision is said to rest upon an adequate and independent state ground. Coleman, 501 U.S. at 730-35. In order for this bar to apply as a procedural default, there must be a state procedural rule applicable to the petitioner's claims, and the petitioner must have failed to comply with that rule. Hutchison v. Bell, 303 F.3d 720, 735 (6th Cir. 2002). In addition, the state court must have enforced the state procedural rule to bar the petitioner's claims. Id. Lastly, the state procedural rule must constitute an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. Id.; Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). A state procedural rule is "adequate" if it is firmly established and regularly followed at the time it is applied. Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001). A state procedural rule is an "independent" ground for precluding federal habeas review if the state court actually relied on the rule to bar the claim at issue. Abela v. Martin, 380 F.3d 915, 921-22 (6th Cir. 2004); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).

The application of the Tennessee waiver rule by the state courts has been previously found by the courts of this Circuit to constitute an adequate and independent state procedural ground supporting dismissal of the claim at the state level, resulting in a procedural default of the claim when brought in a subsequent habeas corpus petition. See Hutchison, 303 F.3d at 738; Cone v. Bell, 243 F.3d 961, 969 (6th Cir. 2001) (finding Brady claim procedurally barred by predecessor to T.C.A. § 40-30-206(g)), rev'd on other grounds, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Coe v. Bell, 161 F.3d 320, 331(6th Cir. 1998), cert. denied, 528 U.S. 842, 120 S.Ct. 110, 145 L.Ed.2d 93 (1999); Mayse v. Morrow, 2008 WL 782615 (M.D. Tenn. Mar. 20, 2008) (Campbell, C.J.). Petitioner has not pointed to any factor that distinguishes his case from these cases or that

11

warrants anything other than a conclusion that these seven claims have been procedurally defaulted because of the state court's application of the waiver rule to the claims.

## VIII. CAUSE AND PREJUDICE

For those claims that have been procedurally defaulted, federal habeas corpus review is barred unless Petitioner demonstrates cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749; Wainwright, 433 U.S. at 80.

A showing of cause requires more than the mere proffer of an excuse. Rather, Petitioner must present a substantial reason to excuse the default by showing that an objective factor external to the defense impeded his efforts to comply with the State's procedural rule. Murray v. Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Franklin v. Anderson, 434 F.3d 412, 417 (6th Cir. 2006). See also Hartman v. Bagley, 492 F.3d 347, 358 (6th Cir. 2007).

In the instant action, Petitioner anticipated in his supporting brief the potential of a procedural default issue when he stated "[of] course, the argument can be made by the State that this petitioner has waived or procedurally defaulted some, most, or all of these claims." See Docket Entry No. 3-4, at 30. However, Petitioner failed to make an anticipatory showing of cause and prejudice and offered only this statement: "[t]o be honest, I'm not really certain how to answer that should it be presented, except to say that this petitioner has never knowingly waived or procedurally defaulted any of the claims he had presented to his appointed counsel and begged them to investigate and present." Id. The only argument made by Petitioner in his response to the Answer, which specifically raised the procedural default argument, is the statement that, "he has made every single reasonable effort to present all issues to the State Courts, though he has been blocked at every turn by the actions of State Actors." See Docket Entry No. 35, at 5.

The Court finds that Petitioner has not made the required showing of cause and prejudice to excuse the procedural default of these claims. Petitioner cannot rely on conclusory assertions of

cause and prejudice to overcome procedural default; he must present affirmative evidence or argument as to the precise cause and prejudice produced. See Lundgren, 440 F.3d at 764. Petitioner's cursory statements certainly do not satisfy this burden and he has not shown in any manner that objective factors external to his defense[6] prevented him from raising the claims deemed to have been waived by the state courts and procedurally defaulted before this Court.

In the absence of cause and prejudice, Petitioner must demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice because the alleged constitutional violations have resulted in his conviction although he is "actually innocent." Murray v. Carrier, 477 U.S. at 496. See Schlup v. Delo, 513 U.S. 298, 314-15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); Kuhlmann v. Wilson, 477 U.S. 436, 454-55, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); Rust, 17 F.3d at 162. This is a "stronger showing than is required to establish prejudice, and will be found only in a truly extraordinary case." Felker v. Turpin, 83 F.3d 1303, 1307 (11th Cir. 1996) (internal quotations omitted) (quoting Schlup); Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995). In addressing this exception, the Supreme Court has distinguished a claim of actual innocence from one of legal innocence, see Smith v. Murray, 477 U.S. 527, 537-38, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), and emphasized the narrow scope of the exception. Sawyer v. Whitley, 505 U.S. 333, 340, 345, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); Dugger v. Adams, 489 U.S. 401, 410 n.6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). Further, a petitioner who seeks review of his underlying constitutional claims under this exception must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. See Schlup, 513 U.S. at 327. This requires Petitioner to support his allegations of constitutional error with new and reliable evidence that was not presented at trial. Schlup, 513 U.S. at 324.

Petitioner has not set forth any new evidence, or even made any arguments, which satisfy the rigorous requirements necessary for application of the actual innocence exception. His

---

[6] The Court notes that any allegations that post-conviction counsel was the cause of claims being procedurally defaulted in the state courts cannot be used to establish cause. Abdus-Samad v. Bell, 420 F.3d 614, 632 (6th Cir. 2005).

13

assertions of constitutional violations are not themselves sufficient to establish a miscarriage of justice. As the Supreme Court in Schlup stated, "[w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." 513 U.S. at 324.

The Court will not review the merits of grounds for relief Nos. 2, 3, 13-16, and 19 because these grounds have been procedurally defaulted and Petitioner has not shown the existence of either cause and prejudice or a miscarriage of justice which warrants review of the grounds.[7]

## IX. MERITS OF EXHAUSTED CLAIMS

Ground No. 1 - Denial Of DNA Testing

Petitioner argues that it was error for the state court to deny his petition requesting DNA analysis through the Post-Conviction DNA Analysis Act of 2001, Tenn. Code. Ann. §§ 40-30-301 et seq., by which the State of Tennessee provides an avenue for petitioners to seek post-conviction DNA analysis of evidence related to their crimes under certain circumstances.

This ground warrants dismissal because it fails to raise a cognizable habeas corpus claim. Habeas corpus proceedings under Section 2254 cannot be used to challenge errors or deficiencies in a state court collateral proceeding. Cornwell v. Bradshaw, 559 F.3d 398, 411 (6th Cir. 2009); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002); Kirby v. Dutton, 794 F.2d 245, 247 (6th Cir. 1986). Whether Petitioner's state court petition for DNA analysis should have been granted is simply not

---

[7] The Court nonetheless notes that three of these grounds for relief fail to present cognizable habeas corpus claims. With respect to Ground No. 3, erroneous factual findings made by the state appellate courts hearing Petitioner's direct appeal and his appeals from the denial of post-conviction relief petitions, even if true, do not evidence a constitutional infirmity in Petitioner's underlying conviction or sentence. With respect to Grounds Nos. 2 and 19, the Sixth Circuit does not recognize the viability of a claim based on the assertion that due process has been violated because of the cumulative effects of distinct constitutional errors. See Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006); Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005); Lorraine v. Coyle, 291 F.3d 416, 447 (6th Cir. 2002).

14

a question, even if found in his favor, that touches upon the constitutionality of his underlying convictions.

Grounds Nos. 4, 5, and 6 - Legality of Searches Conducted on January 12, 1987

Petitioner sets forth three grounds for relief based upon searches which occurred on January 12, 1987, when law enforcement officers arrived at Petitioner's residence without a search warrant, arrested Petitioner, Cauthern, and Barbee without an arrest warrant, and conducted warrantless searches leading to the discovery of credit cards and bank checks belonging to the victims which were found in the open trunk of the car parked at the residence. In Ground No. 4, Petitioner contends that the initial investigatory raid conducted at his home on January 12, 1987, was illegal because it was not supported by either a warrant or probable cause. In Ground No. 5, Petitioner contends that "the investigatory warrantless arrest of everyone present at petitioner's residence" was illegal. See Docket Entry No. 1, at 15. In Ground No. 6, Petitioner contends that the search of his residence, vehicles, and immediate surrounding areas, which all occurred contemporaneously with his arrest and occurred prior to the subsequent issuance of a search warrant for his residence, were illegal.

The Fourth Amendment[8] to the United States Constitution prohibits "unreasonable searches and seizures." As such, it is well-settled that evidence recovered from an illegal search is inadmissible at trial, Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and evidence which is recovered indirectly from an illegal search or seizure is also inadmissible as "fruit of the poisonous tree." Segura v. United States, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599

---

[8] Petitioner contends that the searches at issue violated the Fourth, Fifth and Fourteenth Amendments. However, Petitioner fails to explain his Fifth Amendment claim, and the Court assumes that his reference to the Fourteenth Amendment refers to the application of the Fourth Amendment to the States through the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Accordingly, the Court shall consider these grounds for relief as asserting only violations of the Fourth Amendment.

15

(1984); <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-85, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Each of Petitioner's grounds for relief is premised upon these basic propositions.

However, in accordance with <u>Stone v. Powell</u>, 428 U.S. 465, 481-82, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court finds that these claims are not cognizable in this habeas corpus proceeding and do not support habeas corpus relief. In <u>Stone</u>, the Supreme Court held that federal courts may not consider a habeas petitioner's claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial if the prisoner had an opportunity for full and fair litigation of that claim in the state courts. <u>See</u> <u>Machacek v. Hofbauer</u>, 213 F.3d 947, 953 (6th Cir. 2000); <u>Jennings v. Rees</u>, 800 F.2d 72, 77 (6th Cir. 1986) (per curium). A two-pronged test determines whether a petitioner is entitled to habeas review of a Fourth Amendment claim: 1) whether the state has a procedural mechanism which, in the abstract, presents an adequate opportunity to raise a Fourth Amendment claim, and, if so 2) whether presentation of that claim was frustrated because of the failure of the procedural mechanism. <u>See</u> <u>Riley v. Gray</u>, 674 F.2d 522, 526 (6th Cir. 1982). It is important to note that this inquiry is not meant to be a case specific review of the underlying state court determination. <u>Id</u>.

In the instant action, the record reflects that Petitioner had the opportunity to raise and did raise his Fourth Amendment claims in a preliminary hearing conducted on January 22, 1987, <u>see</u> Attachments to Docket Entry No. 20, Addendum No. 11, Exhibit # 18, at 1-97, and at a suppression hearing before the trial court on February 5-6, 1988, <u>see</u> Attachments to Docket Entry No. 20, Addenda No. 2, Volume I, and that these claims were considered and rejected by the trial court. <u>See</u> Attachments to Docket Entry No. 20, Addendum No. 11, Exhibit # 18, at 96-97; Attachments to Docket Entry No. 20, Addenda No. 1, at 197. The Fourth Amendment claims were also raised and rejected upon Petitioner's direct appeal. <u>See</u> Docket Entry No. 14-1, at 4-5. Accordingly, it is undisputed that Petitioner was provided with an adequate opportunity to raise his Fourth Amendment claims.

16

Petitioner disagrees with the results of the state court proceedings and argues that the state courts misapplied the law and ignored the facts. Further, he argues that testimony and evidence presented at the preliminary hearing, the suppression hearing, and at trial were contradictory and show that the searches were illegal. None of these arguments are sufficient to show that there was a failure of the procedural mechanism provided by the state for review of the Fourth Amendment claims. See Machacek, supra; Beden-El v. Prelesnik, 951 F.2d 348 (Table), 1991 WL 261028 (6th Cir. Dec. 6, 1991); Dotson v. Humphries, 933 F.2d 1008 (Table), 1991 WL 89868 (6th Cir. May 29, 1991); Taylor v. Morgan, 714 F.Supp. 888 (M.D. Tenn. 1989). Second-guessing the merits of the state courts on the merits of Petitioner's Fourth Amendment claims is inconsistent with Stone v. Powell and is not within the scope of habeas corpus review. Gilbert v. Parke, 763 F.2d 821, 824 (6th Cir. 1985).

Ground 7 - Legality of Petitioner's Confession

On January 12, 1987, after being arrested and transported to the Clarksville Police Department, Petitioner was questioned by Tennessee Bureau of Investigation Agent Michael Breedlove and Clarksville Police Department Detective Bobby Gray. At the conclusion of the interview, Petitioner gave an oral statement which contained significant incriminating admissions and which was recorded. See Attachments to Docket Entry No. 20, Addendum No. 11, at Exhibit #16. This statement was later transcribed and introduced into evidence at his trial. Petitioner contends that the statement he provided was involuntary because it was the product of repeated interrogations over the span of four hours that day, of coercion, and of promises made to him that if he cooperated and gave a statement, it would change his punishment from death to life. See Supporting Memorandum (Docket Entry No. 3-1), at 21. He further alleges that he was interrogated for approximately an hour and a half prior to giving the taped statement and that these interrogations occurred prior to his being informed of his right to remain silent, prior to his waiver of his right to

17

silence, and in disregard of his request for counsel.  Id.  As such, he contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated.[9]

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from the custodial interrogation of a criminal defendant unless it can show that the defendant was aware of his rights under the Fifth Amendment prior to questioning.  Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  See also Dickerson v. United States, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).  Additionally, the due process clause of the Fourteenth Amendment prohibits the admission of coerced confessions procured by means "so offensive to a civilized system of justice that they must be condemned."  Miller v. Fenton, 474 U.S. 104, 109, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985).  An admission is deemed to be coerced when the conduct of law enforcement officials is such as to "overbear petitioner's will to resist."  Beckwith v. United States, 425 U.S. 341, 347-348, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (quoting Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)).  An involuntary confession may result from psychological, as well as physical, coercion by law enforcement officials.  Arizona v. Fulminante, 499 U.S. 279, 285-289, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); Miranda, 384 U.S. at 448. However, not all psychological tactics are unconstitutional.  In determining whether a confession has been elicited by means that are unconstitutional, courts look to the totality of the circumstances concerning "whether a defendant's will was overborne in a particular case."  Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In the instant action, this claim was addressed by the Tennessee Court of Criminal Appeal as follows:

> The record shows that Patterson was taken to the police station after his arrest and advised, for at least the second time, of his Miranda rights.  He then confessed at least twice, recounting in great detail the particulars of his encounter with the Smiths. These confessions were extremely incriminating.

_____

[9] To the extent that Petitioner argues a Fourth Amendment claim that his confession should have been suppressed as the "fruit of the poisonous tree" based on his assertion that the search of his home and his arrest violated the Fourth Amendment, such a claim is barred by Stone v. Powell in the same manner as his direct Fourth Amendment claims (Grounds Nos. 4-6) are barred.

18

In finding that the confession was voluntary, the trial court stated:

> The proof is overwhelming that the statement of Mr. Patterson was freely and voluntarily given, that he was advised of his <u>Miranda</u> rights on at least two occasions, the last being just prior to the taped statement which appears on the typed transcript.

> The trial judge's finding is well supported by the record and we agree with it. The issue has no merit and is overruled.

<u>See</u> Docket Entry No. 14-1, at 5 (citation omitted).

The Court has reviewed the transcript of the February 5-6, 1988, suppression hearing, paying close attention to Petitioner's testimony therein. <u>See</u> Attachments to Docket Entry No. 20, Addendum No. 2, Vol. I. The Court has also reviewed the entire record in this action and has considered Petitioner's arguments on the issue. The Court finds that the record supports a conclusion that the ruling by the Tennessee Court of Criminal Appeals on this issue was not an unreasonable determination of the facts in view of the evidence, and Petitioner has not established by clear and convincing evidence that the determination of the Tennessee Court of Criminal Appeals is not entitled to the presumption of correctness.

Petitioner has obviously combed the record with a proverbial fine tooth comb and has pointed out what he believes to be damning inconsistencies between the testimony of the state's agents. However, Petitioner's proof on this issue falls far short of showing that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented to it. The mere fact that Petitioner can point to evidence in the record which could have supported a conclusion contrary to that reached by the state court does not establish, by clear and convincing evidence, that the court must have reached a contrary conclusion. <u>See</u> <u>Davis v. Jones</u>, 306 Fed.Appx. 232, 2009 WL 32710 (6th Cir., Jan. 6, 2009). The state court hearing this claim in the first instance was in the best position to judge the credibility of the state's agents and of Petitioner's own testimony and chose to credit the testimony of the state's agents. It fully appears that the state court made an inquiry into the totality of the circumstances surrounding Petitioner's interrogation and found these circumstances to be consistent with a lawful confession. <u>See</u> <u>Fare v. Michael C.</u>,

19

442 U.S. 707, 724, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); Miranda, 384 U.S. at 475-77; Murphy v. Ohio, 551 F.3d 485, 511 (6th Cir. 2009). There was certainly evidence before the state court supporting its ultimate determination that Petitioner had been advised of his Miranda rights prior to his incriminating statement, had waived his rights, and that his statement was freely and voluntarily given. Furthermore, it is apparent from the record that the determination of the Tennessee Court of Criminal Appeals was neither contrary to nor an unreasonable application of clearly established federal law. For these reasons, this claim is without merit and warrants dismissal.

Ground No. 8 - Legality of Search Warrant

A few hours after Petitioner and Cauthern were arrested, taken into custody, and interviewed, Police Officer Griffey swore out an affidavit for a warrant to search Petitioner's residence at 112 Faith Drive. The affidavit was as follows:

> On January 9, 1987, Clarksville Police Dept. found that the residents of 352 Hampshire Drive Clarksville, TN were both murdered (preliminary autopsy by Dr. Charles Harlan reports strangulation) and their house ransacked; said victims being Rosemary and Patrick Smith. Affiant has talked to a confidential informant whose identity has been made known to issuing judge and who has no record and no reason known to affiant to mistate [sic] the truth and is reliable, and who relates that he talked to Ronnie Cauthern who admitted to said informant that he participated in the robbery and murder of the said victims. Affiant has interviewed the said Cauthern who tells affiant that the purse belonging to the victim, Rosemary Smith, was at the above described premises on this morning, January 12, 1987. When affiant went to the above-described premises to talk to Cauthern this morning, 1/12/87, he observed personalized checks and credit cards belonging to the victims in the trunk of said Cauthern vehicle parked at the above-described premises. When said Cauthern was picked up for an interview, Officer R. Prost found credit cards belonging to the victims in his (Cauthern's) coat pocked [sic], along with various cash in bills.

See Attachments to Docket Entry No. 20, Addendum No. 11, at Collective Exhibit #3; State v. Patterson, 1989 WL 147404 (Tenn. Crim. App. Dec. 8, 1989) (Docket Entry No. 14-1), at 6. The affidavit was reviewed by a state magistrate and the warrant issued. The subsequent search of Petitioner's residence led to the discovery of a large amount of incriminating evidence.

To the extent that Petitioner attacks the facial validity of the search warrant, such a claim is barred by Stone v. Powell. The record reflects that Petitioner had the opportunity to raise, and did raise, at the suppression hearing the argument that probable cause did not exist for the search warrant, see Attachments to Docket Entry No. 20, Addenda No. 2, Volume I, and that this claim was considered and rejected by the trial court. See Attachments to Docket Entry No. 20, Addenda No. 1, at 197. The challenge was also raised and rejected upon Petitioner's direct appeal. See Docket Entry No. 14-1, at 5-6. Accordingly, it is undisputed that Petitioner was provided with an adequate opportunity to raise his Fourth Amendment claim that the search warrant was not supported by probable cause when issued.

Furthermore, the Court's review of the decision of the Tennessee Court of Criminal Appeals that probable cause existed to support the search warrant shows that the state court correctly recognized and applied the standards formulated in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), for evaluating the probable cause to support a search warrant. Petitioner has failed to show that this decision was either contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

He has also not shown that this decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner argues in his Memorandum, see Docket Entry No. 3-2, at 2, that the Tennessee Court of Criminal Appeals hearing his direct appeal based part of its Aguilar-Spinelli analysis that a sufficient basis of knowledge existed for the affidavit upon the factual finding that "the informant states that he observed Mrs. Smith's Army purse on Patterson's premises a few hours before the affidavit was submitted." See Docket Entry No. 14-1, at 6. Petitioner is correct that there is no statement in the affidavit of Officer Griffey supporting such a factual finding. However, the affidavit contains the informant's statement that Cauthern admitted to him his involvement in the crimes and contains Cauthern's admission to Officer Griffey that the purse was located at the Petitioner's residence. Such

21

information is sufficient to satisfy the analysis of the informant's basis of knowledge despite the incorrect factual statement by the state court, and the state magistrate certainly had before him a substantial factual basis for concluding that probable cause existed. See Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Petitioner, perhaps in recognition of the Stone v. Powell hurdle for a facial challenge to the legality of the search warrant, contends that the search warrant should nonetheless be deemed invalid because the supporting affidavit made by Officer Griffey contained four "deliberate, reckless, and false statements, made with the intent to mislead the issuing magistrate," and that any evidence that was uncovered in the search should have been suppressed. See Memorandum in Support (Docket Entry No. 3-1), at 40. He identifies these statements as:

1) "the confidential informant . . . has no record . . .";

2) "the confidential informant . . . is reliable . . .";

3) "when Affiant went to the above described premises to talk to Cauthern this morning, 1/12/87, . . ."; and

4) "When said Cauthern was picked up for an interview, . . .".

Petitioner argues that the informant, now known to be James Andrew, did have a criminal record and that there was little evidence supporting the statement that the informant was reliable. Further, Petitioner contends that the weight of the evidence shows that when Officer Griffey and other law enforcement officers went to the Faith Drive duplex on January 12, 1987, their purpose was to do more than merely "talk to Cauthern" and that Cauthern was clearly taken into custody and arrested, not merely "picked up for an interview" at the conclusion of the initial confrontation between law enforcement officers and Cauthern on January 12, 1987. In support of his argument, Petitioner relies on what he contends are inconsistencies between these affidavit statements and the testimony given at the suppression hearing, at trial, and in the evidentiary hearing conducted in his first post-conviction relief proceeding, and the written opinions of the Tennessee Court of Appeals

22

in his direct appeal and in the decision affirming denial of his first petition for post-conviction relief. Id. at 40-41 and Docket Entry No. 3-2, at 1-20.

When challenging the integrity of a warrant under the Fourth Amendment on the basis that the supporting affidavit contained false statements, a defendant must make a substantial showing that a "false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).[10] If that standard is met, the Court must determine if the alleged false statement was necessary to the finding of probable cause by examining the affidavit with the incorrect assertions set aside to determine if the remaining information is sufficient to establish probable cause for the warrant. Id. at 155-56 and 171-72.

The Court has reviewed the arguments made by Petitioner, the affidavit made by Officer Griffey, and the entire record in this action and finds no merit in this ground for relief.

Petitioner has not made a substantial showing that Officer Griffey's affidavit contained intentional or reckless falsehoods or misleading statements. Only the statement that the informant did not "have a record" has been shown to be false given that the record shows that Andrew had been convicted of reckless driving, speeding, and disorderly conduct. See Docket Entry No. 14-1, at 20. However, Petitioner fails to show that this misstatement was made intentionally or with a reckless disregard for the truth. See Franks, 438 U.S. 155-56. The record shows that Officer Griffey did investigate the prior criminal background of Andrew by checking the Clarksville Police Department computer system to determine whether Andrew had a criminal record and that this

---

[10] Petitioner raised a challenge to the search warrant on direct appeal but did not raise his Franks argument in that appeal. Although the Franks claim was presented in Petitioner's first petition for post-conviction relief, the Tennessee Court of Criminal Appeals declined to address the Franks claim, finding that it was a previously determined issue under state law because a challenge to the legality of the search warrant had already been raised and determined. See Docket Entry No. 14-1, at 16-17.

As such, this claim appears to have been procedurally defaulted. The underlying issue of alleged false statements in the affidavit was nonetheless addressed by the Tennessee Court of Criminal Appeals as part of Petitioner's post-conviction relief claim that his counsel was ineffective for not raising the Franks claims. Id. at 19-21. Given this context, the Court has proceeded to address the merits of this ground for relief despite the apparent procedural flaw.

search revealed no criminal record. <u>See</u> Attachments to Docket Entry No. 20, Addendum No. 10, Vol. II, at 44-46. Conducting such a search is inconsistent with acting either with the intent to deceive or with a reckless disregard for the truth. "[A] misstatement in an affidavit that is merely the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, does not invalidate a warrant." <u>United States v. Colonna</u>, 360 F.3d 1169, 1174 (10th Cir. 2004). <u>See also</u> <u>Franks</u>, 438 U.S. at 171; <u>United States v. Charles</u>, 138 F.3d 257, 263-64 (6th Cir. 1998).

Furthermore, inaccuracies or omissions concerning an informant's criminal record merely go to the issue of the informant's credibility. <u>See</u> <u>U.S. Morrison</u>. 988 F.2d 124, 1993 WL 59331 (9th Cir. Mar. 5, 1993). Given the other information contained in the affidavit and the fact that Andrew's statement about Cauthern's admitted involvement in the crimes was independently corroborated by Cauthern's possession of the victim's credit cards, the inclusion of Andrew's prior criminal record of reckless driving, speeding, and disorderly conduct would not have altered the finding of probable cause.

Petitioner has also not made a substantial showing that the latter three statements at issue were demonstrably false or misleading at the time they were made in the affidavit and were made by Officer Griffey with the intent to deceive or with a reckless disregard for the truth. <u>See</u> Franks, 438 U.S. 155-56.

With respect to the "reliable" statement, the record shows that Officer Griffey believed Andrew to be reliable because he spoke with police officer David Baize ("Baize"), to whom Andrew provided detailed information about the crimes, and that Baize vouched for the reliability of Andrew and because he personally spoke to Andrew for a short time after Petitioner and Cauthern were arrested. <u>See</u> Attachments to Docket Entry No. 20, Addendum No. 10, at 40-54. Furthermore, credit cards found in the trunk of the car at the duplex and in Cauthern's coat corroborated the information Andrew provided to police about the crime. Petitioner apparently believes that this supporting information is insufficient to establish the reliability of Andrew and thus, the statement at issue is false. Petitioner's belief is both self-serving and misguided. There is no concrete

24

definition of reliability, and the actions taken by Officer Griffey to assess the reliability of Andrew were both reasonable and consistent with establishing the reliability of the informant. Petitioner has certainly not made a substantial showing based on evidence in the record or otherwise that Andrew was in fact "not reliable" or that Officer Griffey made this statement to intentionally deceive the state magistrate or with a reckless disregard for the truth.

With respect to the third and fourth statements, there is simply not substantial evidence showing the statements that Officer Griffey went to the duplex to "talk to Cauthern" and that "Cauthern was picked up for an interview" are false or misleading. There can be no doubt that Officer Griffey did in fact go to the duplex to talk to Cauthern the day of January 12, 1987. That Cauthern was a primary suspect in a murder investigation does not nullify this fact. Further, Cauthern was in fact "picked up" and taken by the Clarksville Police Department officers for an interview. The fact that he was taken into custody and arrested does not nullify this fact. Petitioner's attempt to portray these statements as false or misleading by pointing to alleged inconsistent testimony in the record about what various law enforcement officers believed was the purpose of going to the duplex is simply unpersuasive.

Petitioner has also not made a substantial showing based on evidence in the record or otherwise that Officer Griffey made these statements to intentionally deceive the state magistrate or with a reckless disregard for the truth. Finally, the statements at issue are not material to the overall finding of probable cause. A deliberate falsehood must be material to require that the warrant be invalidated. See U.S. v. Campbell, 878 F.2d 170, 172 (6th Cir. 1989). Even if the challenged portions of the statements were set aside from the affidavit, the affidavit would still clearly provide sufficient basis to support a finding of probable cause for a search of Petitioner's residence. The affidavit still contained statements that Cauthern told the affiant that the victim's purse was at Petitioner's residence and the victim's credit cards and personalized checks were found in a vehicle parked at the residence and in Cauthern's coat.

25

Ground Nos. 9-12 - Error in the Admission into Evidence of Redacted Statement

At the February 8, 1988, suppression hearing prior to trial, the trial court ruled that if the written transcripts of the separate, oral statements made by Petitioner and Cauthern to the police were to be introduced at trial, they would have to be redacted to remove the name of the respective co-defendant from the statement and should instead refer to "another person or the other person." See Attachments to Docket Entry No. 20, Addendum No. 2, Vol. I, at 65.

During the trial, the state first moved to introduce the redacted written statement of Petitioner, which contained no references to Cauthern specifically and also contained no reference to "another person" or "other person" where Cauthern's name had previously been. After hearing objections by counsel, the trial court permitted Petitioner's redacted statement to be read into evidence. See Attachments to Docket Entry No. 20, Addendum No. 2, Vol. III, at 107-120 and 136-158. At a later point in the trial, Cauthern's similarly redacted written statement was read into evidence. See Attachments to Docket Entry No. 20, Addendum No. 2, Vol. IV, at 23-25 and 49-87. During both the admission of the statements and during jury instructions, the trial court admonished the jury to consider the statements only as they pertained to the particular defendant who gave the statement.

In his multiple grounds for relief, Petitioner contends that:

1)      the trial court applied an erroneous legal standard to the redaction of the statements (Ground No. 9);

2)      the admission of the redacted statement of Cauthern violated his right to confront Cauthern (Ground No. 10);

3)      the trial court erred by ruling that the redacted statements were admissible prior to reviewing them (Ground No. 11); and

4)      the trial court erred by ruling that Petitioner's redacted statement was admissible because the redacted statement was misleading in that the omitted information made Petitioner appear to be solely culpable for the crimes (Ground No. 12).

See Memorandum in Support (Docket Entry No. 3-2), at 21-38.

The Tennessee Court of Criminal Appeal hearing Petitioner's claim on direct appeal held as follows:

> The defendant next asserts that the admission into evidence of three of his co-defendant's redacted statements violated his Sixth Amendment right to confrontation. We think not.
>
> In a joint trial where both defendants have confessed but neither testifies, the danger to be guarded against is the inculpation of one co-defendant by the statement of the other. Clearly, the statement of a non-testifying co-defendant implicating the other defendant is inadmissible in a joint trial. Cruz v. New York, 481 U.S. 186 (1987); Bruton v. United States, 391 U.S. 123 (1968).
>
> However, the defendant's right to confrontation is not violated where, by the process of redaction, all connecting references to him are eliminated from his co-defendant's statement. The statement, thus rendered non-inculpatory, is admissible into evidence. Dorsey v. State, 563 S.W.2d 639 (Tenn.Crim.App. 1978); Taylor v. State, 493 S.W.2d 477 (Tenn.Crim.App. 1972).
>
> Further, we find no fault with the manner of redaction. In fact, the trial judge accomplished as fine a job of redaction as we have ever seen.
>
> Since redaction is specifically authorized by our Rules,[Tenn.R.Crim.P 14(c)(ii)] and because the meticulous redaction rendered Cauthern's statements innocuous as to Patterson, admitting them into evidence did not violate Patterson's Sixth Amendment right to confrontation.

See Docket Entry No. 14-1, at 6-7.

The state appellate court correctly identified Cruz v. New York, 481 U.S. 186, 193, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), and Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), as the applicable controlling law.  Further, the state court examined the redacted statement and correctly found that all references to Petitioner had been eliminated.  The Court's review of the record, including Petitioner's references to the transcript,  reveals nothing which warrants a finding that the state court's determination that the admission of Cauthern's redacted statement was constitutionally permissible was either contrary to an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or based upon an unreasonable determination of the facts in light of the evidence presented.  Petitioner has not shown that he is entitled to habeas corpus relief on Ground No. 10.

27

Petitioner's assertion that the trial court erred by applying the wrong legal standard by using the terms "another person" or "other person" in the redacted statements is factually unsupported. Although the trial court discussed using these terms in the redacted statements during the suppression hearing, the trial transcript clearly show that the redacted statements did not include these or any other similar terms. See Attachments to Docket Entry No. 20, Addendum No. 2, Vol. III, at 136-158, and Attachments to Docket Entry No. 20, Addendum No. 2, Vol. IV, at 49-87. Accordingly, Ground No. 9 warrants dismissal.

Similarly, Petitioner fails to show habeas relief is warranted by his assertion in Ground No. 11 that the trial court ruled that the statements were admissible prior to reviewing them. Although the Court does not agree with Petitioner that the trial transcript clearly shows that the trial court failed to review the statements prior to their admission, any such error by the trial court, if it occurred, is clearly harmless given the ultimate finding that admission of the statements was not constitutional error.

As to Ground No. 10, Petitioner has failed to show that this ground entitles him to federal habeas corpus relief. His supporting brief refers solely to Tennessee decisions. See Docket Entry No. 3-2, at 35-38. The issue as raised on direct appeal was raised solely as an issue of state law, see Attachments to Docket Entry No. 20, Addendum No. 3, at 24-26,[11] and the opinion of the Tennessee Court of Criminal Appeals addressed the issue only in terms of state law. See Docket Entry No. 14-1, at 7. Errors of state law do not provide a basis for federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990).

Although Petitioner makes a cursory reference to being denied a fair trial by the admission of his own redacted statement, an alleged erroneous evidentiary ruling asserted as the basis for a due

---

[11] Petitioner's presentation of this claim on appeal solely as an issue of state law fails to satisfy the "fully and fairly presented" requirement for exhaustion of the claim and it would thus appear to have been procedurally defaulted. Justices of Boston Mun. Court, supra; Anderson v. Harless, 459 U.S. 4, 7, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). However, for the sake of completeness, the Court has addressed this claim on the merits notwithstanding the procedural flaw.

process claim only rises to the level of a constitutional claim if it is so egregious that it resulted in the denial of a criminal defendant's fundamental right to a fair trial. See Fleming v. Metrish, 556 F.3d 520, 534 (6th Cir. 2009); Baze v. Parker, 371 F.3d 310, 324 (6th Cir. 2004); Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994). Petitioner simply has not satisfied this standard and shown that, in light of the entirety of his criminal trial, the trial court's action denied him a fair trial. Finally, Petitioner certainly has not shown how the decision of the Tennessee Court of Criminal Appeals on this issue either was contrary to or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or was based upon an unreasonable determination of the facts in light of the evidence presented as is required for federal habeas corpus relief.

Ground Nos. 17 and 18 - Ineffective Assistance of Counsel

In Ground No. 17, Petitioner contends that his trial counsel was constitutionally ineffective because counsel failed to "make a reasonable effort to investigate the raid, arrest, detention, and interrogation of the petitioner and to preserve evidence of the illegal and offensive conduct, through investigation and interviews with eyewitnesses to the raid, arrests, and subsequent searches . . . ." See Memorandum in Support (Docket Entry No. 3-4), at 6.

In Ground No. 18, Petitioner contends that his counsel at trial, on appeal, and in the post-conviction relief proceedings were all constitutionally ineffective because they failed "to make any effort to actually investigate the case, defend the petitioner, and subject the State's case to an adversarial testing." See Memorandum in Support (Docket Entry No. 3-4), at 11. Petitioner sets forth eleven specific claims against his trial counsel, two claims against his counsel on direct appeal, one claim against his counsel in the post conviction relief proceedings, and one claim against his counsel in the instant proceeding.[12] Id. at 11–13.

_____

[12] Petitioner asserts that he has been denied the effective assistance of counsel in the instant proceeding because his appointed counsel has failed to assist him. See Docket Entry No. 3-4, at 13 and 23-24. The Court has not ordered that Petitioner be appointed counsel in the instant proceeding

As an initial matter, Petitioner's two claims based on actions occurring in his post-conviction relief proceeding and in the instant Section 2254 proceeding are clearly meritless. 28 U.S.C. § 2254(i) specifically provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."

As to the remaining claims, to establish a claim of ineffective assistance of counsel, Petitioner must show (1) his attorney's representation was deficient; and (2) the deficient performance resulted in prejudice so as to deprive Petitioner of a fair trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Jones v. United States, 161 F.3d 397, 400 (6th Cir. 1998). The failure of Petitioner to show either prong of the test warrants dismissal of the claim. Strickland, 466 U.S. at 697; Baze v. Parker, 371 F.3d 310, 321 (6th Cir. 2004).

With regard to the deficiency prong, Petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688. The objective standard of reasonableness for reviewing whether counsel's conduct was deficient is a "highly deferential" standard that includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. The assistance required is not that of the most astute counsel, but rather "reasonably effective assistance." Id. at 687. To satisfy the prejudice prong, Petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Ultimately, the standard for judging any claim of ineffectiveness must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be

---

and he has proceeded pro se from the filing of the petition. There is nothing in the record to suggest that Petitioner sought and/or gained the assistance of counsel from an independent source, and no attorney filed a notice of appearance on behalf of Petitioner.

relied on as having produced a just result." Id. at 686. Counsel's error must have been so egregious as to render the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, 506 U.S. 364, 369 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In reviewing counsel's conduct, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

Petitioner's claims of ineffective assistance of counsel were reviewed by the Tennessee Court of Criminal Appeals upon his appeal from the denial of post-conviction relief. The state court began its review by summarizing the evidence presented in the post-conviction relief proceeding and by stating the correct standards for review of such claims and recognizing the controlling United States Supreme Court case of Strickland. See Docket Entry No. 14-1, at 15-18. The state court then reviewed the merits of Petitioner's post-conviction claims that trial counsel failed to adequately address the legality of Petitioner's arrest, failed to adequately address the validity of the search warrant, failed to file a motion to sever the trial of Petitioner from that of Cauthern, failed to adequately address the voluntariness of Petitioner's statement, failed to object to portions of the prosecutor's opening statement and closing argument, failed to adequately investigate the case, and were deficient in the manner in which they conducted the trial. The state court also reviewed the merits of Petitioner's claim that counsel on direct appeal failed to include the transcript of the sentencing hearing in the record on direct appeal. Id. at 18-25.

The Court has reviewed the entire record in this action and Petitioner's arguments that he was not provided constitutionally effective assistance of counsel. In addition to finding shortcomings which render some of Petitioner's specific claims meritless, as addressed below, the Court finds that the Tennessee Court of Criminal Appeals' determination of Petitioner's Strickland claims was neither contrary to nor an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, nor was based upon an unreasonable

31

determination of the facts in light of the evidence presented as is required for federal habeas corpus relief.

Petitioner's assertion that there was a "total failure of the adversary process," see Docket Entry No. 3-4, at 10, because of the actions or inactions of his counsel is self-serving hyperbole and wholly unsupported by any fair reading of the record. Petitioner's counsel were presented with a client who had confessed to the heinous crimes at issue and had been found to possess substantial amounts of incriminating evidence linking him to the crimes and the victims. Petitioner has not presented, and there does not appear in the record, the existence of any alibi evidence or any other plausible exculpating defense. The record clearly shows that counsel sought to suppress Petitioner's confession and the incriminating evidence linking him to the crimes, made appropriate objections at trial, engaged in appropriate cross-examination of the state's case, and presented appropriate argument to the jury. Ultimately, although Petitioner was convicted, he received a sentence of life imprisonment instead of the sentence of death that his co-defendant Ronnie Cauthern received. Despite Petitioner's arguments and his use of the transcripts from his state court proceedings to support his claims, he has failed to make any persuasive showing that there is a reasonable probability that, but for counsels' alleged unprofessional errors, the result of the proceeding would have been different. See Strickland, 466 U.S. at 694.

With respect to Petitioner's multiple claims that trial counsel was ineffective for failing to investigate, Petitioner has not shown what he believes would have been discovered by such investigation or shown how he was specifically prejudiced by the alleged failure to investigate. His belief that further investigation would have benefitted him is pure conjecture.

With respect to any of Petitioner's claims that ultimately hinge upon challenges to his arrest, the searches conducted at the duplex, or his confessions, such claims must fail on the prejudice prong of the Strickland analysis because the Court has found that no underlying constitutional violations occurred with respect to these events.

32

With respect to Petitioner's two claims of ineffective assistance of counsel on direct appeal, the two specific claims presented in the instant action were not presented and exhausted in Petitioner's first post-conviction relief proceeding. Although Petitioner raised two catch-all "failure to brief" claims against his counsel on direct appeal, see Appendix to Petition (Docket Entry No. 2-1, at 10-11, these two claims were not included in subsequent amendments to his petition for post-conviction relief and the only claim pursued against appellate counsel was a claim that counsel failed to perfect the record of the sentencing hearing on appeal. Id. at 14-19. In his appeal from the denial of post-conviction relief, Petitioner likewise raised only the claim that appellate counsel failed to perfect the sentencing record. See Attachments to Docket Entry No. 20, Addendum No. 12, at 3. Accordingly, the specific assertions of ineffective assistance of counsel during his direct appeal made by Petitioner in the instant action have been procedurally defaulted, and Petitioner has not shown cause and prejudice for this procedural default.

## RECOMMENDATION

Based on the foregoing reasons, the Court respectfully RECOMMENDS that the Petition for a Writ of Habeas Corpus filed by Brett A. Patterson be DENIED and that this action DISMISSED WITH PREJUDICE.[13]

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this Report, or the proposed findings or

---

[13] The Magistrate Judge notes that review of the record in this case was made exceedingly difficult by Respondent. Not only did Respondent fail to provide sufficient analysis, see n.4 supra, but the state of the record provided by Respondent was extremely unhelpful. The record consisted of 24 separate Addenda contained in 15 individual attachments. These filled two document boxes. Although the Notice of filing (Docket Entry No. 20) outlined what each Addenda represented, the specific Addenda were not separated within each individual attachment or clearly marked other than the cover page of each attachment. Further, there was no pagination of either the overall record or each particular attachment. Finally, nine of the individual attachments were collated but not bound other than to being held together by a rubber band.

Although the Order entered September 10, 2007 (Docket Entry No. 19), permitted Respondent to file a hard copy of the record rather than electronically filing the record, such an exemption from normal procedure does not relieve Respondent from providing an organized record with appropriate pagination to facilitate effective review.

33

recommendation to which objection is made.  Failure to file objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order.  See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET  GRIFFIN
United States Magistrate Judge