**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRETT ALLEN PATTERSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:07-0029** |
| | ) | **Judge Echols** |
| **WAYNE BRANDON, WARDEN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM**

On January 9, 1987, Patrick and Rosemary Smith ("Mr. Smith" and "Mrs. Smith," respectively), United States Army Captains and nurses at Fort Campbell, were strangled in their home in Clarksville, Tennessee. Mrs. Smith was also raped. After the couple did not show up for work the next morning, concerned co-workers called the police who went to the home and discovered the bodies. They also discovered that the telephone line had been cut, the house had been ransacked, and numerous items had been stolen, including clothing, cash, personal checks, a VCR, and jewelry.

Within a week of the crime, Petitioner Brett Allen Patterson ("Petitioner") and his friend Ronnie Cauthern ("Cauthern") were arrested for their participation in the crimes, and both confessed after interrogation. They were jointly tried and both were convicted of assorted crimes, including two counts of first degree murder, one count of first degree burglary, and one count of aggravated rape.

As a result of his convictions, Petitioner is serving two consecutive life sentences, a consecutive forty year sentence, and a concurrent ten year sentence in the Tennessee Department

1

of Correction. He has filed a "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus By a Person in State Custody" ("habeas petition" or "petition") (Docket Entry No. 1) in which he raises nineteen grounds for relief, with sub-parts. The habeas petition itself is 41 pages long, and the accompanying brief is 190 pages long.

The Magistrate Judge issued a lengthy Report and Recommendation ("R & R") (Docket Entry No. 41), recommending that the habeas petition be denied and that this case be dismissed with prejudice. Petitioner filed Objections to the R & R (Docket Entry No. 47), and also filed a "Renewed Motion for Appointment of Counsel" (Docket Entry No. 48).

## I. THE R & R AND PETITIONER'S OBJECTIONS

Where a party files timely objections to an R & R, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). After thoroughly considering the R & R and the Petitioner's objections thereto, and having reviewed the voluminous state court record, the Court finds that the Magistrate Judge correctly resolved each of the claims raised by the Petitioner and properly determined that the habeas petition should be dismissed.

In the R & R, the Magistrate Judge concluded that Petitioner procedurally defaulted with respect to claims numbered 2, 3, 13-16 and 19 and that Petitioner has not demonstrated cause for the default and actual prejudice with respect to those claims. As for the claims which were properly exhausted, the Magistrate Judge considered each and found that Petitioner was not deprived of his federal constitutional rights and therefore not entitled to habeas relief.

2

In his Objections, Petitioner takes issue with most of the determinations by the Magistrate Judge. The Court considers those objections in the order presented by Petitioner.

## A.  Objections Relating to Factual Statements in the R & R

Petitioner first argues the Magistrate Judge erred in setting forth the factual background of the case. Specifically, Petitioner takes issue with the following statements:

> On January 12, 1987, James Andrew ["Andrew"], an acquaintance of Cauthern, provided the police with information and evidence implicating Petitioner and Cauthern in the crimes. That same day Cauthern's girlfriend also gave to police a lady's ringset and wristwatch that Cauthern had recently given her and which was later identified at trial as belonging to Rosemary Smith. Based upon this information, law enforcement officers went to a duplex located on Faith Drive . . .

(R & R at 2). Petitioner claims the foregoing misstates the record because Andrew testified at trial that he met Petitioner just after Christmas 1986; he did not know Petitioner's name at the time he spoke with the police; he identified Cauthern's cohort as "someone named Pat who was tall with sandy brown hair"; he admitted that Petitioner never told him anything about the crimes; and, he did not give police the credit cards he had stolen from Cauthern until after Petitioner and Cauthern were in custody. (Addendum Vol. 5 of 15, XI at 97-157). As for Cauthern's girlfriend, Jackie McCook ("McCook"),[1] she testified she took the ring and watch to the police the morning after both Petitioner and Cauthern were taken into custody. (Id. XII at 69-70). Petitioner claims that in light of the testimony given by Andrew and McCook, the Magistrate judge erred in essentially finding that there was "cause to raid an unknown person's residence" and that the Magistrate Judge "commits an error that many of the lower quotes have committed" by suggesting that Andrew and

_____

[1] At the time of the crimes, Jackie McCook's surname was Lambert. Prior to trial she married Robert McCook.

3

McCook turned stolen property over to police prior to Cauthern's and Petitioner's arrest. (Docket Entry No. 47 at 1).

This Court has read Andrew's and McCook's testimony and Petitioner's representation of their testimony is basically correct with respect to his contention that they testified the police were provided with stolen credit cards (from Andrew) and stolen jewelry (from McCook) after Cauthern and Petitioner had been arrested. However, the purported misstatements in the R & R are of no particular significance for two reasons.

First, the Magistrate Judge was not making findings of fact, but instead was setting forth the basic background of the case to place Petitioner's assorted claims into context. Second, Petitioner's stilted reading of Andrew's testimony omits much of what Cauthern relayed to Andrew and what Andrew, in turn, told the police which established the probable cause for Cauthern's and Petitioner's arrest.

Andrew testified that on the day after the murders, January 10, 1987, a Saturday, Cauthern came to his trailer around 2:00 or 3:00 p.m. and, over the course of that afternoon and evening, bragged about being involved in the murders. Cauthern said that he and Petitioner went to the Smiths' house because Cauthern mistakenly believed the Smiths were doctors who could be robbed of a lot of money. Upon arrival, Cauthern and Petitioner broke a window in the door, gained access to the home, and found the Smiths asleep. After the Smiths were awakened, Petitioner got into a struggle with Mr. Smith and Cauthern came to his aid, telling Mrs. Smith to get into a closet. Cauthern told Andrew that he and Petitioner then strangled Mr. Smith and, thereafter, raped Mrs. Smith. Cauthern then strangled Mrs. Smith. Andrew testified that, while at the trailer, Cauthern showed him credit cards and jewelry which purportedly had been stolen from the Smiths' residence.

4

While Cauthern was relaying the crimes to Andrew, Petitioner stopped by the trailer to drop off a Z-28 Camaro he had been driving, but did not mention the crime. Andrew did not know Petitioner's given name at that time, but did know that he went by the nickname "Pat." He also knew that the person that Cauthern implicated in the crime was the person Andrew knew as "Pat," and that the person on trial with Cauthern was the person he knew as "Pat."

On Monday, January 12, 1987, Andrew contacted the police and relayed to Lieutenant David Baize ("Lt. Baize") of the Clarksville Police Department what he had been told by Cauthern.[2] Based upon this information, the police went to a duplex located at 112-114 Faith Drive in Clarksville where they observed Cauthern, Petitioner, and Eric Barbee ("Barbee") standing beside a vehicle with its hood and trunk lid open. Police observed checks and credit cards in the trunk which belonged to the Smiths and the trio was arrested.

Importantly, the information relayed by Andrew and the observation of stolen items led to Petitioner's arrest, not some sort of misunderstanding about when police received either the stolen credit cards from Andrew, or the jewelry from McCook. Indeed, in both the direct appeal, State v. Patterson, 1989 WL 147404 (Tenn. Crim. App. 1989) ("Patterson I") and on appeal from the denial of Petitioner's first petition for post conviction relief, Patterson v. State, 1999 WL 701455 (Tenn. Crim. App. 1999) ("Patterson II"), the state courts upheld the arrest of Petitioner based upon what police had discovered at the scene of the crime (which included a piece of paper with Cauthern's

_____

[2]Andrew testified he did not go to the police sooner because he was afraid of Cauthern and claimed that, during discussions about the crimes, Cauthern pointed a shotgun at his head and told him not to tell anyone about what Cauthern had said. Andrew further testified that the next morning, a Sunday, he left the trailer to stay with a friend because he did not feel comfortable with Cauthern. The following morning, January 12, 1987, Andrew contacted police.

5

name on it), Andrew's statements to Lt. Baize, and the officers' observation of stolen credit cards and checks when they arrived at 112-114 Faith Drive.

On direct review of the issue of probable cause for the warrantless arrests, the Court of Criminal Appeals of Tennessee wrote:

> The facts adduced at the pretrial suppression hearing show that police were faced with a double homicide, having found the bodies of Patrick and Rosemary Smith in their Clarksville home on January 9, 1987. Preliminary findings revealed that both victims had suffered death by strangulation, and that Mrs. Smith had been sexually molested.
>
> From their crime scene investigation, the officers concluded that the residence had been forcibly entered, and that an undetermined amount of property, including jewelry, cash, credit cards, and checks, had been taken. Officers also found a piece of paper with Cauthern's name on it at the scene.
>
> On the morning of January 12, 1987, an informant told investigators that he had seen Cauthern and Patterson with credit cards and checks with the names "Patrick Smith" and "Rosemary Smith" embossed on them. Additionally, the informant revealed that Cauthern had described the killings, relating certain details that investigators had not made public.
>
> Investigators sought to question Cauthern and Patterson. When they confronted Patterson on January 12, 1987, at about noon, he was with Cauthern and another person. The three were standing in front of the open trunk of Cauthern's car. The officers saw, in plain view, personalized checks and credit cards with the victims' names on them. Other items with the Smiths' names on them were recovered from the pockets of Cauthern's jacket. The three men were immediately arrested.
>
> It may well have been that Patterson was apprehended during the commission of a felony. But in any event, it is profoundly manifest to us that Patterson's arrest, supported as it was by the abundance of probable cause enumerated above, was lawful.

Patterson I, 1989 WL 147404 at *4 (footnote and citations omitted). Similarly, that court in reviewing Petitioner's request for post-conviction relief wrote:

> Gray testified at the suppression hearing that on January 9, 1987, he and other officers discovered the bodies of the Smiths at their home. Subsequent investigation revealed that both Smiths had been strangled to death and someone had taken the Smiths' credit cards. On January 12, 1987, Andrew informed the police that he had seen the Smiths' credit cards in the possession of Petitioner and Cauthern. Andrew also provided information about the death of the Smiths that was corroborated by the police. Later that day, police went to question Cauthern and they observed

6

Petitioner, Cauthern, and Barbee standing in front of a vehicle. The officers saw credit cards and checks with the Smiths' names on them in plain view in the open trunk of the vehicle. At this point, the officers arrested Petitioner, Cauthern, and Barbee. . . . We agree with this Court's holding on direct appeal that Petitioner's arrest was supported by probable cause.

Patterson II, 1999 WL 701455 at *6.[3] Neither court mentioned police receiving any stolen items prior to Petitioner's and Cauthern's arrest and they upheld the warrantless arrests based upon Andrew's statements and the officers' observation of stolen property in plain view. Any purported misstatement in the R & R about when the stolen items were turned over to the police is irrelevant and this objection is overruled.

Petitioner also objects to the Magistrate Judge's statement in a footnote that after Barbee was arrested and taken to the police department for questioning, the disposition of any charges against him is unknown and, in any event, not relevant. Petitioner "objects to this cursory dismissal of Eric Barbee, as he was illegally arrested" and claims that "Barbee spent three weeks in jail for being unfortunate enough to be my friend and neighbor[.]" (Docket Entry No. 47 at 3). Whether Barbee was "illegally arrested" or not is an issue personal to Barbee, not Petitioner, and does not go to the guilt or innocence of Petitioner or whether Petitioner was provided with a fair trial within the meaning of the Constitution. This objection is overruled.

---

[3]Petitioner also takes issue with the state court's findings that Cauthern lived with Petitioner on Faith Drive. The state court's alleged misstatements about who actually resided at the residence is a red herring. Officers were actively looking for Cauthern and Petitioner based upon what they had been told by Andrew. In an effort to locate the pair, Joseph Griffy ("Griffy"), a Clarksville Police Department narcotics officer, swung by Petitioner's residence because he had previously observed Cauthern on a couple of occasions at the Faith Drive residence. When Griffy observed Cauthern and Petitioner standing next to a car in front of the residence, he radioed other officers.

**B. Objections Relating to Findings of Procedural Default**

Petitioner claims the Magistrate Judge erred in finding that Petitioner procedurally defaulted on grounds 2, 3, 13-16 and 19. Petitioner argues he has presented clear and/or convincing evidence that the state courts made factual determinations which were clearly erroneous, that prosecution witnesses committed perjury, and that the district attorney knowingly presented that perjured testimony and allowed it to stand uncorrected.

In the R & R, the Magistrate Judge concluded that Petitioner failed to raise Grounds 2, 3, 13-16 and 19 in his direct appeal and in his first post-conviction relief proceeding.[4] The Magistrate Judge also concluded that Petitioner failed to show cause so as to excuse that failure.

In order to show cause for not raising a claim earlier, Petitioner must show "some objective factor external to the defense," Murray v. Carrier, 477 U.S. 478, 486 (1986), which "prevented counsel from constructing or raising the claim." McCleskey v. Zant, 499 U.S. 467, 497 (1991). Examples of objective factors external to the defense that constitute cause include interference by officials and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." Murray, 477 U.S. at 488. Unless counsel is constitutionally ineffective, his failure to raise a claim does not excuse procedural default. Id.

Some of the things about which Petitioner complains clearly are not matters external to the defense. For example, his claim that the findings of the state trial court are "clearly erroneous on

_____

[4]These claims were raised as a part of Petitioner's second petition for post-conviction relief, but found by the Tennessee Court of Criminal Appeals to have been waived under state law because they were not a part of Petitioner's direct appeal or his first post-conviction petition. Patterson v. State, 2006 WL 3093216 (Tenn. Ct. App. 2006)("Patterson III). Tennessee's waiver rule constitutes an adequate and independent ground for dismissal of a claim at the state level and a claim so dismissed is procedurally defaulted for purposes of federal habeas review. See, Hutchison v. Bell, 303 F.3d 720, 738 (6th Cir. 2002).

their face" (Ground 3) and that the testimony of Andrew was prejudicial hearsay which violated his confrontation rights (Ground 13), are matters which, on their face, can hardly be said to be "external" or due to some underhandedness by the State since counsel and Petitioner were present when the court made its rulings and when Andrew testified. Other matters, such as his claim that he suffered a "TOTAL DENIAL OF DUE PROCESS of law" in violation of "the Fourth, Fifth, Sixth and Fourteenth Amendments" (Ground 2), and his claim that he was denied the "RIGHT TO A FAIR TRIAL through the prejudicial misconduct, perjury, fraud and improper intervention of the State" in violation of the Fifth, Sixth and Fourteenth Amendment (Ground 19) entitle him to no relief because "the law in this Circuit is that cumulative error claims are not cognizable on habeas[.]" Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006).

Regardless, this Court has considered all of the arguments relating to cause and finds, as did the Magistrate Judge, that Petitioner does not come close to establishing cause so as to excuse his procedural default. Rather, he speculates and offers conclusory assertions as to why he should be excused for not presenting the claims to the state court in a timely fashion. However, "[h]abeas petitioners cannot rely on conclusory allegations of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir. 2006).

The majority of the claims which the Magistrate Judge found to have been defaulted relate to Petitioner's contention that virtually every person who testified against him at trial or during the first post-conviction proceeding committed perjury. Petitioner spends more than thirty pages of his supporting brief, much of it single-spaced, excerpting what various witnesses testified to in an effort to show that Andrew, Detectives Bobby Gray ("Det. Gray") and Earl Cockearell ("Det.

9

Cockearell") of the Clarksville Police Department, Agent Michael Breedlove ("Agent Breedlove") of the Tennessee Bureau of Investigation (TBI), and Joseph Denning ("Denning") "all committed demonstrable perjury" and that Assistant District Attorney, Wade Bobo ("ADA Bobo") was aware of the falseness of the testimony but nevertheless presented it.

This Court agrees with the Magistrate Judge's observation that "Petitioner has obviously combed the record with a proverbial fine tooth comb and has pointed out what he believes to be damning inconsistencies between the testimony of the state's agents." (Docket Entry No. 41 at 19). The shotgun approach taken by Petitioner, while not uncommon, is not particularly persuasive. See, United States v. Henderson, 179 Fed. Appx. 535, 540 (10th Cir. 2006) (citation omitted) (rejecting knowing use of perjury claim where petitioner cited "picayune examples," "pored over the transcript, hunting for minor inconsistencies between the stories of prosecution witnesses" and "conclude[d] with the extravagant claim that 'every one of the government's witnesses committed perjury with full knowledge of the prosecutor.'").

Nevertheless, the Court has considered Petitioner's arguments relating to alleged perjury in conjunction with the state court record. Petitioner seeks to show that a witness lied because that witness said something different than another witness, or because a given witness' testimony was different at trial than it was during the suppression hearing. Standing alone, such assertions do not show perjury. "Discrepancy is not enough to prove perjury" because '[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason." Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004).

More fundamentally, Petitioner does not show how the alleged perjury was "external to the defense." In virtually every instance, Petitioner points to testimony that a witness gave at trial and

10

juxtaposes that testimony with testimony given by that witness or another witness at the trial, the suppression hearings, and/or the first post-conviction hearing. However, Petitioner was represented in all of these proceedings and therefore Petitioner cannot show "that the factual or legal basis for [the perjury] claim was not reasonably available to counsel." Murray, 477 U.S. at 488.

In his objections, Petitioner does not identify instances where the alleged perjured testimony came to his attention only after the conclusion of his direct appeal and his first post-conviction proceeding. Rather, he merely asserts generally that the Magistrate Judge erred in failing to find that the state witnesses committed perjury and thus erred in failing to find cause to excuse the Petitioner's default. However, in order to establish cause it is incumbent upon Petitioner to present "a substantial reason that is external to himself and cannot be fairly attributed to him." Harman v. Bagley, 492 F.3d 347, 358 (6th Cir. 2007). It is also incumbent upon him to raise specific objections to the R & R. Fed. R. Civ. P. 72(b)(2). "Objections disputing the correctness of the magistrate judge's recommendation, but failing to specify the findings believed to be in error are too general and therefore insufficient." Stamtec, Inc. v. Anson, 296 Fed. Appx. 518, 520 (6th Cir. 2008).

Apart from claiming that he has "repeatedly" provided "clear evidence" that shows the defaulted claims were not presented because "the knowing conduct of State actors prevented their presentation," Petitioner asserts that the Magistrate Judge erred in failing to appoint counsel because "competent counsel could demonstrate, clearly and conclusively, that objective factors external to the defense impeded efforts to present these [defaulted] issues." (Docket Entry No. 47 at 4-5). Leaving aside the inherent inconsistency in Petitioner's argument that he has clearly demonstrated cause yet he needs counsel to present such evidence, the Magistrate Judge did not err in failing to appoint counsel for the Petitioner. The decision of whether to appoint counsel for an indigent civil

11

litigant is left to the discretion of the Magistrate Judge, see, Lanier v. Bryant, 332 F.3d 999, 1006 (6th Cir. 2003), and that discretion was not abused in this case. Petitioner adequately presented his positions in what the Magistrate Judge aptly characterized as "the most comprehensive habeas corpus petition submitted by a pro se petitioner that the Magistrate Judge has ever reviewed." (Docket Entry No. 41 at 7). In any event, "[t]he fact that he is proceeding *pro se* with his 2254 petition is insufficient to establish cause." Jackson v. Bullard, 210 Fed. Appx. 895, 901 (11th Cir. 2006).

Of course, "[e]ven where a petitioner fails to show cause and prejudice, the court must still consider whether a miscarriage of justice would occur if the procedural default were enforced." Carter v. Mitchell, 443 F.3d 517, 538 (6th Cir. 2006). "'Specifically, a court may notice an otherwise defaulted claim if it concludes that petitioner has shown by clear and convincing evidence that but for constitutional error no reasonable juror would have found him guilty of the crime[.]'" Id. (quoting, Greer v. Mitchell, 264 F.3d 663, 673 (6th Cir. 2001)). A miscarriage of justice is said to occur where a Petitioner demonstrates his actual innocence. Murray, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

Here, the Magistrate Judge observed that "Petitioner has not set forth any new evidence, or even made any arguments, which satisfy the rigorous requirements necessary for application of the actual innocence exception" (Docket Entry No. 41 at 13) and he has not done so in his Objections to the R & R. In light of that failure, Petitioner's objections to the Magistrate Judge's ruling on defaulted claims are overruled.

12

**C. Objections Relating to Rulings on Merits of Exhausted Claims**

**1. *Ground 1 – Denial of DNA Testing***

In Ground 1 of his Petition, Petitioner claims the evidence in the possession of the state should be subjected to DNA testing pursuant to T.C.A. § 40-30-301.[5]  The Magistrate Judge found that this claim should not be considered because it is not properly cognizable in habeas proceedings. That determination was correct.

Habeas corpus proceedings "cannot be used to challenge errors or deficiencies in the state court post-conviction proceedings." Cornwell v. Bradshaw, 559 F.3d 398, 411 (6th Cir. 2009); see, Shlee v. Williams, 2010 WL 777156 at *28 (N.D. Ohio 2010)(denial of post-conviction DNA testing is not cognizable in habeas because a petitioner is not in custody pursuant to an order which denies such a request); Turner v. Carlton, 2008 WL 2169519 at *2 (E.D. Tenn. 2008)(state court's post-conviction denials of requests for DNA testing "are not cognizable habeas corpus claims").  This objection is overruled.

**2. *Grounds 4, 5 and 6 – Legality of January 12, 1987 Searches***

In Grounds 4-6 of his Petition, Petitioner asserts that the warrantless "raid" at the duplex, the warrantless arrest, and the warrantless search of the vehicle and surrounding areas violated the Fourth, Fifth, and Fourteenth Amendments.  The Magistrate Judge concluded that these claims fail because Petitioner had an opportunity to raise, and did in fact raise, Fourth Amendment claims relating to the activity by the police officers on January 12, 1987, at his preliminary hearing on January 22, 1987, at a suppression hearing on February 5 & 6, 1988, and on direct appeal.  Because

---

[5]Petitioner's request for DNA analysis was the only claim considered on the merits in Patterson III and it was rejected.

Petitioner had an adequate opportunity to raise such claims in the state court, the same were not reviewable in this habeas corpus proceeding under Stone v. Powell, 428 U.S. 465, 481-82 (1976).

Petitioner raised two objections. First, he argues the Magistrate Judge erred by characterizing his claims as being brought solely under the Fourth and Fourteenth Amendments and failing to address the claims under the due process clause of the Fifth Amendment. Petitioner argues that the "Fifth Amendment guarantees are not obscure complex legal arguments that need to be clearly explained, especially to a Court" and that "Due Process of Law requires warrants before arrests, warrants prior to searches, [and] prior to the invasion of a citizen's private property." (Docket Entry No. 47 at 6).

The point the Magistrate Judge was making is that "where a [petitioner] complains of an 'unreasonable search and seizure,' the claim is more properly analyzed under the Fourth Amendment than the substantive due process provisions of the [Fifth Amendment or] Fourteenth Amendment, since the former is a 'more explicit textual source of the constitutional protection.'" Wilson v. Wilkins, 2010 WL 272552 at *3 (6th Cir. 2010)(quoting, Graham v. Connor, 490 U.S. 286, 395 (1989)). True, Petitioner argues that his Fifth Amendment rights were violated but, no matter how he tries to couch it, his claim relating to his warrantless arrest hinges upon whether police had probable cause to make an arrest after they arrived and viewed contraband in plain view. This is an issue quite distinct from the issue of whether Petitioner later voluntarily gave statements to the police. Cf. Withrow v. Williams, 507 U.S. 680, 688-89 (1993)(declining to extend Stone to Fifth Amendment claims involving voluntariness of confession).

Petitioner's second objection relates to the following passage in the R & R:

> Petitioner disagrees with the results of the state court proceedings and argues that the state courts misapplied the law and ignored the facts. Further, he argues that

testimony and evidence presented at the preliminary hearing, the suppression hearing, and at trial were contradictory and show that the searches were illegal. None of these arguments are sufficient to show that there was a failure of the procedural mechanism provided by the state for review of the Fourth Amendment claims.

(Docket Entry No. 41 at 17). Petitioner argues that a "total failure of the 'procedural mechanism' has occurred" and this is shown by the "clear and convincing evidence" that ADA Bobo and law enforcement officials joined together to present perjured testimony and thereby misled the trial court and defense counsel. As already indicated, however, the record does not support Petitioner's perjury claims. This objection is overruled.

### 3. Ground 7 – Legality of Petitioner's Confession

With respect to Ground 7, the Magistrate Judge found there was evidence before the state court which supported its determination that Petitioner had been advised of his *Miranda* rights and waived those rights prior to confessing, and that Petitioner's statements were freely and voluntary given.

Petitioner first objects, arguing that the Magistrate Judge only addressed Petitioner's statement "in light of the Direct Appeal as of Right" which did not include the alleged perjured testimony of Det. Gray and the misleading testimony of Agent Breedlove. (Docket Entry No. 41 at 6). Petitioner also claims the Magistrate Judge "ignored the brief, claims, and argument presented by the Petitioner in the accompanying habeas corpus opinion." (Id. at 8). These arguments mis-characterize the R &R.

While the Magistrate Judge indicated that the evidence supported the finding of the Tennessee Court of Criminal Appeals on direct appeal relating to voluntariness, her conclusion was based upon a review of the "entire record in this action," "Petitioner's arguments on the issue," and

"the transcript of the February 5-6, 1988 suppression hearing, paying close attention to Petitioner's testimony therein." (Docket Entry No. 41 at 19). The Magistrate Judge simply did not consider the voluntariness of Petitioner's confession in a vacuum as Petitioner suggests.

In his Objections, Petitioner focuses on the post-conviction evidence and the ruling of the trial court based on that evidence. In the ruling, the judge found that "the proof indicated that the Petitioner had been interviewed for approximately two hours when he gave his incriminating statement." (Post Conviction Opinion "PCO" at 8). This finding, Petitioner contends, shows that Agent Breedlove and/or Det. Bobby Gray lied at the suppression hearing because they essentially testified that Petitioner was given his *Miranda* warning upon being brought to the police station, yet the only written waiver in the record shows that Petitioner signed the waiver approximately two hours after he had been brought to the station. Petitioner asserts that during this two hour period he was interrogated and the police refused to stop the interrogation.

The voluntariness of a confession is a legal determination and a matter for independent federal review, but the underlying state factual findings are conclusive if fairly supported by the record because "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant." Miller v. Fenton, 474 U.S. 104, 117 (1985). Thus, "the district court is required to apply a presumption of correctness to state court findings of fact unless the petitioner offers clear and convincing evidence rebutting this presumption." Vazquez v. Bradshaw, 345 Fed. Appx. 104, 131 (6th Cir. 2009). This Court has reviewed the entire record relating to the voluntariness of Petitioner's confession and finds that

Petitioner has failed to present clear and convincing evidence which suggests that the facts before the state court did not support a finding of voluntariness.

In focusing on the state judge's post-conviction finding that approximately two hours elapsed before Petitioner gave an incriminating statement, Petitioner fails to consider that the very same judge also found that his confession was voluntary and agreed with the Tennessee Criminal Court of Appeal on this issue. Specifically, the judge wrote:

> As to the voluntariness of the statement, this Court concludes that the petitioner was not held for such an exorbitant amount of time that the time period alone would have resulted in an involuntarily statement given due to illegal questioning or because of illegal detention. In conclusion, this Court again agrees with the Court of Criminal Appeals that the statement was voluntarily given.

(PCO at 7). This conclusion is not clearly wrong in light of all of the evidence presented, and Petitioner's suggestion that he was interrogated for two hours without being advised (either orally or in writing) of his *Miranda* rights is belied by Petitioner's own testimony at the suppression hearing.

Petitioner testified that after he was brought to the police station, he was informed he had been arrested in connection with the Smith murders. (Addendum Vol. 2 of 15 at 138). He further testified that, upon being informed of the reason for his arrest, he had "to sit and wait for an hour to an hour and a half, because during that time they took items away from us like shoes and other items[.]" (Id. at 133-134). Petitioner also testified that during this period, Agent Breedlove and Det. Gray were shuttling between the rooms containing Cauthern and Petitioner. Petitioner further testified that the statement he gave was not the entire interview, and admitted that prior to the written statement being given he had already been told that he could speak with a lawyer if he wanted to. (Id. at 134-135).

17

Aside from the issue of whether or not Petitioner was given a *Miranda* warning prior to making inculpatory statements, Petitioner claims that his confession was involuntary because (1) he told the officers upon being orally advised of his *Miranda* rights that he wanted to speak with a lawyer;  and (2) his confession was based upon promises of leniency.

Whether Petitioner invoked the right to counsel presents a quintessential factual issue since both Det. Breedlove testified in unequivocal terms that Petitioner did not ask to speak with a lawyer until the interview concluded.  (Addendum Vol. 3 of 15 at 6).  The trial judge found the confession to be willful (id. at 48) and that finding, because it is supported by the record, is presumptively correct.

As for alleged promises of leniency, Petitioner asserts the Magistrate Judge erred by failing to consider the findings of the state judge in the post-conviction proceedings to the effect that Petitioner was promised he would escape the death penalty only if he confessed.  Petitioner reads the state judge's opinion too broadly.

While the state judge indicated Petitioner understood that "his cooperation meant the difference between a life sentence and the death penalty" (PCO at 8), the state judge ultimately concluded that "the record does not support a claim that the petitioner relinquished his right to counsel due to promises of assistance or leniency or due to duress."  (Id.).  In this regard, the judge credited the testimony of Agent Breedlove, finding that Agent Breedlove told the Petitioner "his cooperation could be one consideration for the jury to consider in determining his sentence if convicted."  (Id. at 7).  "[A] statement about possible leniency upon cooperation is not generally impermissible," United States v. Cruse, 59 Fed. Appx. 72, 78 (6th Cir. 2003), nor is it impermissible for a police officer to speculate that cooperation will have a positive effect on a defendant's sentence

18

upon conviction.  <u>United States v. Wiley</u>, 132 Fed. Appx. 635, 640 (6th Cir. 2005).  The judge's conclusion that Petitioner did not relinquish his right to remain silent because of improper promises is further buttressed by Petitioner's affirmation on tape that "[n]o promises or threats have been made to me and no pressure or coersion [sic] of any kind has been used against me."  (PCO at 8).

Petitioner's Objections to the Magistrate Judge's conclusion with respect to Ground 7 is overruled.

### 4.  <u>Ground 8 – Legality of Search Warrant</u>

With regard to the search warrant which was executed at Petitioner's home after his arrest, the Magistrate Judge concluded that <u>Stone</u> barred an attack on the facial validity of the search warrant and that the state courts properly applied the standards in <u>Auguilar v. Texas</u>, 378 U.S. 108 (1964) and <u>Spinelli v. United States</u>, 393 U.S. 410 (1969) in deciding whether probable cause existed to support the issuance of a search warrant.  Petitioner makes no specific objection to these conclusion, but instead "challenges the conclusions made by the Magistrate" and "adopts the arguments submitted in support of his Habeas Petition."  (Docket Entry No. 47 at 9).

Such a vague objection does not satisfy the requirements of Fed. R. Civ. P. 72(b)(2).  Nevertheless, the Court has reviewed the arguments raised in Petitioner's habeas petition and finds that the Magistrate Judge reached the correct result as set forth at pages 20-25 of the R &R.[6]  This objection is overruled.

---

[6]This is particularly so since, at the time of trial and direct appeal, the Supreme Court had already decided <u>Illinois v. Gates</u>, 462 U.S. 213 (1983) which abandoned the inflexible two-part test developed under <u>Spinelli</u> and <u>Aguilar</u>.  Instead, the existence of probable cause should be determined under the totality of the circumstances and based upon answering the "commonsense, practical question whether there is 'probable cause to believe that contraband or evidence is located in a particular place."  <u>Id</u>. at 230.

## 5.  Grounds 9-12 – Error Relating to Redacted Statements of Petitioner

At the joint trial of Petitioner and Cauthern, redacted statements from each were presented to the jury.  Petitioner claims that this amounted to constitutional error for a host of reasons, including that the trial court misstated that "another person" or "the other person" could be used in place of the name of the co-defendant; that the trial court erred in ruling that the redacted statements were admissible prior to reviewing the statements as redacted; that the redacted statement of Petitioner was misleading because it made him appear to be solely culpable for the crimes; and that the admission of Cauthern's redacted statement violated Petitioner's confrontation clause rights. The Magistrate Judge rejected each of those claims, finding that the state courts properly applied the controlling law to the facts presented.

Petitioner objects to the R & R, arguing that his confrontation rights were violated because Cauthern's statement, as redacted, contained "7 clear and unambiguous references to another person" and the references to "another person" could only be a reference to Petitioner since he and Cauthern were the only ones on trial.  (Docket Entry No. 47 at 9).  However, various courts of appeals have indicated that the prosecution "can avoid a Bruton violation by replacing the defendant's name with a neutral term." United States v. Vasilakos, 508 F.3d 401, 407)(6th Cir. 2007)(collecting cases).  In fact, the Sixth Circuit in Vasilakos joined the Fourth, Eighth, and Tenth Circuits in holding that there is no Sixth Amendment or Bruton problem "in a joint trial, where the defendant's name is redacted and a neutral term is substituted . . . such as 'the person' or 'another person.'" Id. at 408.  The Court agrees with the Tennessee Court of Criminal Appeals that "the trial judge accomplished [a] fine . . . job of redaction[,]" Patterson I, 1989 WL 147404 at *6, and this objection is overruled.

Petitioner next claims the trial judge erred by ruling that the statements, as redacted, would be admissible without having seen the statements as redacted. Like the Magistrate Judge, the Court finds that the record does not clearly show this is what actually occurred. What the record does suggest is that, at the suppression hearing the week before trial, and during trial before the statements were introduced, the judge discussed with counsel how the statements should be redacted and indicated at that time he did not have the redacted statements before him. Regardless, whether the judge reviewed the statements to see that they had been redacted as he had instructed before they were shown to the jury is not relevant because the issue is whether the statements, as presented, violated Petitioner's constitutional rights. This objection is overruled.

Petitioner next contends that in his original statement to the police, he indicated that he remained downstairs and that he only went upstairs to assist Cauthern after he heard a struggle, yet his statement as redacted suggested that he was the primary aggressor instead of Cauthern. This Court has read the redacted statement and finds, like the Tennessee Court of Criminal Appeals in Patterson II, 1999 WL 701455 at *10, that it did not overly distort Petitioner's role in the crimes.

Petitioner's objection relating to the admission of the statements also fails because "Confrontation Clause errors are subject to harmless-error analysis." Vasquez v. Jones, 496 F.3d 564, 574 (6th Cir. 2007). On collateral review, the test for harmlessness is whether the alleged error was harmless beyond a reasonable doubt. Chapman v. California, 385 U.S. 18, 24 (1967).

Here, after being apprised of his *Miranda* rights, Petitioner confessed in detail to his involvement in invading the Smiths' home, raping Mrs. Smith and strangling Mr. Smith. (Addendum No. 2, Vol. 10 of 15, Ex. 5 pp. 1-17). In a lengthy handwritten statement, Petitioner

21

also admitted choking Mr. Smith with a piece of twine and raping Mrs. Smith.  (Addendum No. 2, Vol. 14 of 15 at 000088-000092).  "An erroneous admission of a non-testifying co-defendant's confession can constitute harmless error where the defendant claiming a <u>Bruton</u> violation confessed to full participation in the crimes."  <u>Standford v. Parker</u>, 266 F.3d 442, 456 (6th Cir. 2001).

Petitioner's objections relating to the redacted statements are overruled.

### 6. <u>Grounds 13, 14, 15, & 16 – Procedurally Defaulted Claims</u>

Petitioner next objects to the Magistrate Judge's refusal to consider Grounds 13-16 on the merits.  This Court has already found that the Magistrate Judge was correct in ruling that Petitioner procedurally defaulted on these claims and failed to show cause for said failure.  This objection is overruled.

### 7. <u>Ground 17 – Ineffective Assistance of Counsel Due to Failure to Investigate</u>

Petitioner objects to what he views as the Magistrate Judge giving only passing consideration to his ineffective assistance of counsel claim alleging a failure to investigate.  Petitioner does not elaborate on his objection but instead refers the Court to the brief he filed in support of his habeas petition.  Again this is not a sufficient objection under Rule 72(b)(3).  Nevertheless, the Court has considered the claim and finds it to be without merit.

A failure to investigate can constitute ineffective assistance of counsel.  <u>See</u>, <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003).  However, to establish such a claim, Petitioner must show that counsel's performance was deficient and that those deficiencies prejudiced the defense within the meaning of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Petitioner asserts counsel failed to interview possible witnesses.  To prevail on this claim, he must "show that had [the witness] testified, the result of his trial would have been different with

a 'probability sufficient to undermine confidence in the outcome.'" Davis v. Booker, 589 F.3d 302, 307 (6th Cir. 2009)(citation omitted).  Petitioner fails to meet that burden.

Petitioner claims he asked counsel to interview witnesses to his arrest, and in particular his neighbors, believing they could shed light on the "raid" on Faith Drive.  He also claims counsel failed to interview those alleged witnesses as promised.  For support, Petitioner points to the post-conviction hearing, but the record of that hearing is far from conclusive on the matter.

At the hearing, John Richardson ("Richardson") and Lionel Barrett ("Barrett"), both of whom represented Petitioner at trial and on appeal, testified.  They were unable to remember many details of their preparation for trial, and that is somewhat understandable given that the first post-conviction hearing occurred almost ten years after the crime and almost eight years after the trial. (Addendum Vol. 9 of 15 at 37-68 & 69-82).  Regardless, Richardson testified that he did in fact interview Barbee who was present at the time of the "raid," even though Petitioner testified that he did not believe Barbee had been interviewed.  (Id. at 42 & 74).  At the hearing, Petitioner also took the stand and testified that he gave counsel a fairly detailed list of who should be interviewed, but he did not specify any particular individuals, other than to say counsel should have spoken to Petitioner's former platoon sergeant and the company commander at Fort Campbell, "just to get a feel of who I was on post."  (Id. at 75).

"In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  Because deference is given to counsel and the presumption is that counsel is effective, "[c]laims of uncalled witnesses are disfavored, especially if the claim is

23

unsupported by evidence indicating the witness's willingness to testify and the substance of the proposed testimony." Gregory v. Thaler, 2010 WL 1010598 at *4 (5th Cir. 2010).

To prevail in his habeas case, Petitioner must show that the Tennessee Criminal Court of Appeals in Patterson II unreasonably applied Strickland when it concluded that counsel was not ineffective in failing to investigate. Id. Petitioner does not come close to making that showing.

In the scheme of things, what some unidentified neighbors may have had to say about what happened during the "raid," says little about Petitioner's guilt or innocence of the crimes charged. Likewise, even if Petitioner's platoon sergeant and/or company commander was willing to talk to counsel, and even if those individuals had great things to say about Petitioner's service in the Army, that would not affect whether Petitioner was responsible for the crimes charged.

Counsel were faced with both oral and written confessions by the Petitioner, as well as Cauthern's implication of Petitioner in the crimes. Counsels' best hope was to try to keep such evidence out by arguing that the confessions were not voluntary. Counsel undertook that task with great vigor, and even Petitioner himself concedes that "counsel cross examined Detective Bobby Gray extensively concerning [Petitioner's] allegations" of coercion and threats. (Docket Entry No. 3-4 at 166). Petitioner's objections are overruled.

**8. Ground 18 – Other Claims of Ineffective Assistance of Counsel**

In Ground 18, Petitioner sets forth 15 separate reasons why he believes counsel was ineffective. The Magistrate Judge recommends dismissal of those claims, finding that the Tennessee Court of Criminal Appeals' determination of Petitioner's Strickland claims was neither contrary to, nor an unreasonable application of, federal law. Petitioner asserts that the R & R gives only

24

"cursory treatment" to his specific claims, a result which he finds "disheartening." (Docket Entry No. 47 at 11).[7]

Petitioner fails to recognize that review of counsel's performance by a habeas court is extremely deferential and imposes a heavy burden on him to establish ineffectiveness. The Supreme Court in <u>Strickland</u> explained that "[j]udicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>. 466 U.S. at 689. Therefore, a court considering a claim of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id</u>. at 688-89.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986). The Constitution requires that a defendant receive a fair trial, not a perfect one since "there can be no such thing as an error free, perfect trial[.]" <u>United States v. Hasting</u>, 461 U.S. 499, 508-09 (1983).

Petitioner argues that "[e]ffective assistance of counsel means more than having a body in court sitting with a Defendant" and that his attorneys "DID NOTHING BUT SIT THERE." (Docket Entry No. 47 at 27). This hyperbolic assertion is simply not borne out by the state court record.

_____

[7]The Court notes that, insofar as the R & R sets forth general conclusions, this was necessitated by Petitioner's sweeping assertions that virtually everything counsel did or did not do before trial, at trial, on appeal, and during the post-conviction proceedings was ineffective.

25

Further, Petitioner has not met his burden of showing ineffectiveness of counsel with respect to the specific alleged errors set forth in his petition.

### A. *Pre-Trial Representation*

Petitioner raises several arguments relating to counsel's pretrial representation. For the reasons previously stated, the Court rejects Petitioner's claim that counsel was ineffective in failing to interview potential witnesses.

Petitioner also claims that counsel were ineffective at the suppression hearing. The primary basis for this claim is that the suppression hearing was not held until the week before trial, and over a year after Petitioner had been arrested. Leaving aside that Petitioner concedes an initial suppression hearing was held on July 24, 1987 (more than sixth months before trial (Docket Entry No. 3-4 at 174)), and even if it is assumed counsel were entirely responsible for the second suppression hearing being held on the eve of trial, this does not mean counsel were ineffective because the issue is not when the hearing was held but rather whether their performance at the hearing was effective.

Petitioner claims counsel were unprepared for the suppression hearing and that counsel "did no legal research before trial." This is a conclusory argument and "conclusory statement[s are] . . . wholly insufficient to raise the issue of ineffective assistance of counsel." Elzy v. United States, 205 F.3d 882, 886 (6th Cir. 2000). Further, Petitioner's argument does not square with Richardson's citation of numerous cases to the court (Addendum Vol. 2 of 16 at 23-26), or Petitioner's admission (noted previously) that Richardson "extensively" cross-examined Det. Gray. Regardless, a review of the suppression hearing transcript does not suggest that counsel were unprepared or that they did not ably represent Petitioner.

26

Petitioner also claims that counsel failed to "file the necessary motions to protect Petitioner's rights." (Docket Entry No. 3-4 at 171). But counsel did file the motion to suppress, and, as the Tennessee Court of Criminal Appeals noted counsel filed motions for the criminal records of all of the state's witnesses. Patterson II, 1999 WL 701455 at *14. The record also shows that counsel filed motions for the severance of offenses, to compel, to submit jury questionnaires, to change venue, for sanctions, and for individual sequestered *voir dire*, among others. (Addendum Vol. 2 of 16 at 2-6). As for other pretrial motions, Petitioner does not specify what those motions should have been and, importantly he does not explain how the failure to file the unidentified motions prejudiced him as required by Strickland.

### B. *Representation at Trial*

Petitioner claims counsel were ineffective in failing to object to the "prejudicial hearsay" testimony of Andrew. However, the underpinnings of this claim are the same as set forth in Ground 13 of the habeas petition which the Court has already found procedurally defaulted. Petitioner did not raise an ineffective assistance of counsel claim in relation to this issue during his post-conviction proceedings. Therefore, the Court will not consider this claim because it has not been exhausted.

Petitioner next claims counsel were ineffective at trial because they failed to take notes at the second suppression hearing and this failure resulted in their not being able to point out the "perjured" testimony at trial. Petitioner identifies no evidence which shows counsel did not take notes, and, in any event, the Court is unaware of a constitutional requirement that counsel must take notes. Further, the trial was held right after the second suppression hearing and the Court cannot assume that counsel were unfamiliar with the testimony which had just been given. While there may

27

have been some discrepancies in the testimony as between the second suppression hearing and trial, the Court has already observed that the mere fact that a witness may testify somewhat differently does not necessarily mean that the witness committed perjury.

Petitioner claims counsel were ineffective in failing to call him as a witness because Petitioner had informed counsel that he did not in fact rape Mrs. Smith, even though he had confessed to doing so. The Tennessee Court of Criminal Appeals found that counsel were not ineffective because a tactical decision was made to keep Petitioner off of the stand in an effort to minimize Petitioner's role in the crimes. Patterson II, 1999 WL 701455 at *14. This is supported by the testimony of Barrett at the first post-conviction hearing who indicated that they were striving to avoid the death penalty and sought to "keep a low profile" and "not open any doors." (Addendum Vol. 9 of 15 at 76). While Petitioner now says in hindsight he should have been called to the stand so he could recant his statement that he raped Mrs. Smith, he neglects to consider that, by taking the stand, he would have been subjected to cross-examination about his full involvement in the crimes.

Relatedly, Petitioner claims Richardson was ineffective regarding the rape charge because he did not cross-examine the TBI Laboratory Technician, Constance Howard ("Howard"). Petitioner does not show how this prejudiced him since he admits Howard testified that none of the samples taken from Mrs. Smith implicated Petitioner. (Docket Entry No. 47 at 176).

Petitioner also claims counsel was ineffective in opening statements and closing arguments because counsel admitted the guilt of petitioner and stated that there was no possible defense to the crimes.[8] The excerpts of the transcript quoted by Petitioner (Docket Entry No. 3-4 at 176) simply

_____

[8]It does not appear that this precise issue was directly raised during Petitioner's post-conviction proceeding and, to the extent it was not, it is procedurally defaulted.

28

do not support this contention and this Court's own review indicates that counsel did not concede Petitioner's guilt. Counsel's statement that he could not give the jury "a schematic" of what the defense would show was merely a comment indicating that the defense did not know how the State would present its case in light of the many people the State listed as possible witnesses.

Petitioner next claims that counsel were ineffective in failing to object to several of the prosecutor's statements during opening statements and closing arguments, including statements which Petitioner contends were false and statements which implicated Petitioner's failure to testify. This claim fails because the prosecutor's statements were considered on direct appeal and found not to warrant a new trial Patterson I, 1989 WL 147404 at *7, and, on post-conviction review, counsels' failure to object was found not to constitute ineffective assistance of counsel. Patterson II, 1999 WL 701455 at **12-13. This latter determination was not an incorrect decision under Strickland. Moreover, under Strickland, strategic choices are "virtually unchallengeable," 460 U.S. at 90, and trial counsel often "refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality." United States v. Molina, 934 F.2d 1440, 1448 (9th Cir.1991). [9]

### C. *Representation on Appeal*

Petitioner asserts counsel were ineffective on appeal because they failed to meaningfully investigate the case which "carried over into the preparation of the Direct Appeal brief"; they failed to point out discrepancies in Griffy's testimony; they failed to point out the "massive amount of

---

[9]Petitioner also claims that counsel were ineffective in failing to exclude the redacted confession from the evidence. This Court has already determined there was no constitutional violation in relation to the admission of the redacted statement.

perjured testimony and the misconduct on the part of the state" and they failed to "properly brief" all of the issues that they raised in the direct appeal. (Docket Entry No. 3-4 at 180-181). Most of these issues have been already considered by this Court and found not to be constitutional violations. Moreover, these issues were not squarely raised in the first post-conviction proceedings alleging ineffective assistance of appellate counsel and the issue that was raised – appellate counsel's failure to file the sentencing record – was found not to be prejudicial because the appeals court was able to address the issue of consecutive sentencing on the merits. <u>Patterson II</u>, 1999 WL 701455 at *12. Petitioner has not demonstrated that counsel were ineffective on appeal.

### D. *Post-Conviction Representation*

Petitioner claims counsel provided ineffective representation in his post-conviction proceedings. As the Magistrate Judge properly noted, this claim fails because "[t]he ineffectiveness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." 28 U.S.C. § 2254(i).

## II.  RENEWED REQUEST FOR APPOINTMENT OF COUNSEL

Petitioner renews his request for the appointment of counsel. In his motion, Petitioner argues that "the failure to appoint counsel will unequivocally ensure that this Petitioner does not receive a fair Federal review of his claims." (Docket Entry No. 48 at 2).[10]

As already noted, Petitioner is not entitled to counsel as of right in these proceedings, and the appointment of counsel is a matter of discretion for the Court. Petitioner has been able to

---

[10]In his Objections to the R & R, Petitioner asserts that he "deserves one fair hearing" on his claims. (Docket Entry No. 47 at 12). As the foregoing makes clear, Petitioner has received fair consideration on multiple occasions, including at trial, on direct appeal, on post-conviction review and appeal, before the Magistrate Judge, and before this Court.

adequately present his arguments in his 41-page petition, in his 190-page brief, and in his Objections, and, contrary to his fears, he has received a fair review of his federal claims as evidenced by the exhaustive opinions of the Magistrate Judge and this Court. His renewed request for the appointment of counsel will be denied.

### III. CONCLUSION

For the foregoing reasons, the Report and Recommendation of the Magistrate Judge (Docket Entry No. 41) will be accepted and approved, Petitioner's Objections thereto (Docket Entry No. 47) will be overruled, and this case will be dismissed with prejudice. Petitioner's "Renewed Motion for Appointment of Counsel" (Docket Entry No. 48) will be denied.

Further, a Certificate of Appealability will not issue because Petitioner cannot demonstrate that reasonable jurists would find the Court erred in determining that Petitioner has procedurally defaulted on Grounds 2, 3, 13, 14, 15, 16, and 19, or erred in determining that Petitioner is entitled to no relief on Grounds 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 17, and 18 of his habeas petition. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

31